No. 23-20118

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Diamond Services Corporation,

Plaintiff - Appellant

v.

Curtin Maritime Corporation; Department of Homeland Security;
National Vessel Documentation Center; United States Coast Guard;
United States of America; Commandant, Linda L. Fagan, United States
Coast Guard; Port of Houston Authority,

Defendants - Appellees

On Appeal from the United States District Court
for the Southern District of Texas,
Houston Division, No. 4:22-cv-02117

**BRIEF OF APPELLEES DEPARTMENT OF HOMELAND
SECURITY; NATIONAL VESSEL DOCUMENTATION CENTER;
UNITED STATES COAST GUARD; UNITED STATES OF
AMERICA; AND COMMANDANT, ADMIRAL LINDA L. FAGAN**

ALAMDAR S. HAMDANI
United States Attorney

MYRA SIDDIQUI
Assistant United States Attorney
1000 Louisiana St., Suite 2300
Houston, TX 77002
(713) 567-9600

# CERTIFICATE OF INTERESTED PERSONS

(1) No. 23-20118; Diamond Services Corporation v. Curtin Maritime Corp., Department of Homeland Security, National Vessel Documentation Center, United States Coast Guard, United States of America, Commandant Linda L. Fagan, United States Coast Guard, Port of Houston Authority

(2) The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

a. **Plaintiff-Appellant**

Diamond Services Corporation

b. **Defendants-Appellees**

Curtin Maritime Corp., Department of Homeland Security, National Vessel Documentation Center, United States Coast Guard, United States of America, Commandant Linda L. Fagan, United States Coast Guard, Port of Houston Authority

c. **Counsel for Plaintiff-Appellant Diamond Services Corporation**

Harry E. Morse
Martin Stewart Bohman

i

d. **Counsel for Defendant-Appellee Curtin Maritime Corp.**

> Jadd Fitzgerald Masso, Esq.
> Elizabeth Fitzgerald Griffin
> John Kevin Spiller

e. **Counsel for Defendants-Appellees Department of Homeland Security, National Vessel Documentation Center, United States Coast Guard, United States of America, Commandant Linda L. Fagan, United States Coast Guard**

> Alamdar S. Hamdani, United States Attorney
> Myra Siddiqui, Assistant United States Attorney

f. **Counsel for Defendant-Appellee Port of Houston Authority**

> Kelsi Stayart White
> Todd William Mensing

> */s/ Myra Siddiqui*
> Myra Siddiqui
> Assistant United States Attorney
>
> Attorney of Record for
> Defendants-Appellees
> Department of Homeland
> Security, National Vessel
> Documentation Center, United
> States Coast Guard, United
> States of America, Commandant
> Linda L. Fagan, United States
> Coast Guard

ii

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a)(1) and 5th Cir. R. 28.2.3, Appellees United States of America; Department of Homeland Security; United States Coast Guard; Commandant, Admiral Linda L. Fagan; and the National Vessel Documentation Center's ("NVDC") (together, "the Federal Appellees") state that the Court can decide the issues presented on the briefs and the record.

# TABLE OF CONTENTS

<u>PAGE</u>

CERTIFICATE OF INTERESTED PERSONS ........................................i

STATEMENT REGARDING ORAL ARGUMENT ...............................iii

TABLE OF CONTENTS  ........................................................................iv

TABLE OF AUTHORITIES ..................................................................vi

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUE...............................................................1

STATEMENT OF THE CASE .................................................................1

STANDARD OF REVIEW......................................................................2

SUMMARY OF THE ARGUMENT .......................................................3

FACTUAL BACKGROUND....................................................................4

ARGUMENT ..........................................................................................7

I.    The agency's determination is entitled to deference under the

     APA. .................................................................................................7

II.   The statutory and regulatory background of the Jones Act and

     the Second Proviso................................................................... 11

     A. The legislative history of the Second Proviso shows that

        Congress intended to rely on agency expertise................ 12

B. The Coast Guard has promulgated regulations to implement the Jones Act and the Second Proviso and provides publicly available review criteria. ...................... 15

III. The agency's interpretation comports with the statutory and regulatory text .......................................................... 17

IV. The legislative history supports the agency's interpretation. ......................................................... 24

V. The Coast Guard's interpretation is consistent with the purposes of the Jones Act. ...................................................... 27

CONCLUSION ........................................................ 30

CERTIFICATE OF SERVICE ................................................. 31

CERTIFICATE OF COMPLIANCE ........................................ 32

# TABLE OF AUTHORITIES

<u>CASES</u>                                                          <u>PAGE(S)</u>

*American Hawaii Cruises v. Skinner*, 713 F.Supp. 452
    (D.D.C. 1989) ............................................................ 12, 13, 17, 22

*Auer v. Robbins*, 519 U.S. 452 (1997)................................. 3, 9, 10, 11, 21

*Barnhart v. Walton*, 535 U.S. 212 (2002).................................................27

*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945) .....................9

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) .............................................. 3, 9, 10, 17, 18, 20

*Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599
    (5th Cir. 2010) .................................................................................2

*Duncan v. Walker*, 533 U.S. 167 (2001) .......................................... 14, 15

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ...................7

*Huntington Ingalls, Inc. v. Dir., Off. of Workers' Comp. Programs,*
    *United States Dep't of Lab.*, No. 21-60752, 2023 WL 3833853 (5th
    Cir. June 6, 2023) ....................................................................... 9, 10

*Keystone Shipping Co. v. United States*, 801 F. Supp. 771
    (D.D.C. 1992) ................................................................................22

*Kisor v. Wilkie*, 139 S. Ct. 2400, 204 L. Ed. 2d 841 (2019)............... 21, 22

*Lorillard v. Pons*, 434 U.S. 575 (1978)....................................................27

*OSG Bulk Ships, Inc. v. United States*, 132 F.3d 808
(D.C. Cir. 1998) ........................................................................ 28, 29

*Penn. R. Co. v. Dillon*, 335 F.2d 292 (D.C. Cir. 1964) ............................ 24

*Philadelphia Metal Trades Council, MTD, AFL-CIO v. Allen*,
No. CIV.A. 07-145, 2008 WL 4003380 (E.D. Pa. Aug. 25, 2008) .. 27,
28

*Shipbuilders Council of Am. v. U.S. Coast Guard*, 578 F.3d 234
(4th Cir. 2009) ................................................................... 10, 11, 24

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ............................. 10, 11

*Texas Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771 (5th Cir. 2010) ... 7, 19

## STATUTES

5 U.S.C. § 706(2)(A) ................................................................................ 7

46 U.S.C. § 12101(a) ............................................................. 12, 14, 15, 17

46 U.S.C. § 12102(a) .............................................................................. 11

46 U.S.C. § 12112(a)(2)(A) .................................................................... 11

46 U.S.C. § 12132(b) ........................................................................ 11, 12

46 U.S.C. § 50101(a) .............................................................................. 28

46 U.S.C. § 55102(b) .............................................................................. 12

46 U.S.C. § 55109(a) ................................................................. 11


REGULATIONS

46 C.F.R. § 42.13-15(j) ............................................................ 26

46 C.F.R. § 67.177 ...................................................... 7, 12, 15

46 C.F.R. § 67.177(a) ............................................................. 23

46 C.F.R. § 67.177(b) ........................................................ 23, 24

46 C.F.R. § 67.3 ..................................... 8, 16, 17, 18, 19, 23

46 C.F.R. § 67.97 .................................................. 6, 12, 16, 17


RULES

Fed. R. Civ. P. 56(c) ................................................................. 3


OTHER

Administrative Procedure Act, 5 U.S.C. § 706(2)(A) .......................... 7, 10

The Jones Act ........................................................3, 10, 12, 13, 15, 24, 27

Vessel Rebuilt Determinations, 60 Fed. Reg. 17290 (Apr. 5, 1995) ....... 23

## STATEMENT OF JURISDICTION

The Federal Appellees do not dispute that this Court has jurisdiction to decide this appeal.

## STATEMENT OF THE ISSUE

Did the district court properly grant the Federal Appellees' motion for summary judgment?

## STATEMENT OF THE CASE

This lawsuit, filed on June 28, 2022, arises out of a Coast Guard decision regarding the coastwide endorsement of a vessel of Appellant Diamond Services Corporation's ("Diamond Services") competitor, Curtin Maritime Corporation ("Curtin"). The National Vessel Documentation Center ("NVDC") concluded that the use of a foreign-sourced crane and spuds would not disturb Curtin's coastwide endorsement, which requires that the vessel be U.S. built. In response, Diamond Services brought this lawsuit against the United States of America, Department of Homeland Security, United States Coast Guard, Commandant, Admiral Linda L. Fagan, the NVDC, the Port of Houston Authority, and Curtin (collectively, "Coast Guard"). Diamond Services alleges that the Coast Guard abused its discretion and was arbitrary and capricious in concluding the spuds and the crane are not part of the vessel's hull or

1

superstructure and thus that Curtin's vessel would be considered built in the United States.

The Coast Guard filed the administrative record on October 2022 (ROA.282) and moved for summary judgment on November 30, 2023 (ROA.307). On March 6, 2023, the magistrate judge recommended granting summary judgment (ROA.584), and the district judge adopted this recommendation on March 22, 2023 (ROA.635).

Diamond Services filed this appeal on March 24, 2023 (ROA.637) and its brief on May 16, 2023 (Appellant's Br.). The Federal Appellees now respond and respectfully request that the Court affirm the district court's dismissal of the claims against them in their entirety.

## STANDARD OF REVIEW

The appellate court reviews a grant of summary judgment "*de novo*, applying the same standard as the district court." *Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 604 (5th Cir. 2010) (internal citations omitted). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)).

## SUMMARY OF THE ARGUMENT

Under *Chevron,* an agency's interpretation of a statute that is "silent or ambiguous with respect to the specific issue" is given deference as long as it "is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). When an agency is interpreting its own regulation, as here, the agency's interpretation is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997). In the Jones Act and its amendment, Congress intentionally left gaps in the statute to be filled in by agencies with relevant expertise. Here, the Coast Guard applied both the statute and its implementing regulations, which remain undisturbed by Congress. Its decision comports with other similar decisions by the agency and is consistent with the legislative history and purpose of the Jones Act. In fact, Diamond Services' proposed determination would run counter to prior Coast Guard rulings as to whether the crane and spuds are part of the hull or superstructure. Because Diamond Services cannot show that the

Coast Guard's decision is arbitrary, capricious, or otherwise contrary to law, this Court should affirm the district court's dismissal of this lawsuit.

## FACTUAL BACKGROUND

On September 10, 2019, Curtin sent a letter to the National Vessel Documentation Center ("NVDC") seeking a preliminary determination that the barge DB AVALON would be eligible for a coastwise endorsement. ROA.292. The letter described Curtin's plan to construct the DB AVALON at a United States shipyard and outfit it with spuds and a crane sourced from a foreign vessel. *Id*. Spuds (circled in red below) are retractable vertical steel shafts that can be lowered to the bottom of a waterway to provide additional stability. The letter indicated that "[t]he Vessel will be assembled entirely in the United States." ROA.295.



ROA.18 (annotations in red added).

On September 24, 2019, after routine consultation with personnel in the Coast Guard's Naval Architecture Division (CG-ENG-2), the NVDC Director responded to Curtin via letter confirming that the dredge DB AVALON would still be considered built in the United States, and therefore, eligible for documentation with a coastwise endorsement. ROA.286.

The NVDC's letter reiterated Curtin's description, noting that "[t]he crane, including its mounting ring, will be bolted to the Vessel's hull; not welded, and will be completely removable from the Vessel. The spuds will also be removable from the Vessel. When removed, the Vessel will remain a complete and intact vessel and will be fully capable of operating as a vessel without the spuds and crane." *Id*. Based on this description, the NVDC concluded "the spuds and crane would be considered outfitting and not part of the hull or superstructure of the Vessel. I refer you, in general, to the Review Criteria Memorandum posted on the NVDC website and to its subparagraphs (e) and (i), in particular," making clear which criteria the agency relied on. *Id*. These subparagraphs read:

e. Sponsons and floats: Sponsons that are permanently attached to the hull are considered part of—and redefine—its flotation envelope. However, **detachable buoyant floats that augment stability or lifting capacity for special operations are not included in the flotation envelope** if they are not otherwise necessary for the vessel's normal stability conditions (i.e., these are essentially part of the vessel's cargo-handling arrangements).[1]

i. Cargo handling & stowage arrangements: winches & booms, kingposts, **cranes**, etc., **are outfitting items and not included as hull structure**. This also applies to cargo stowage items, such as container racks/cell guides, lockdown or lash-down fittings, etc. On RO/RO vessels, adjustable vehicle decks and ramps are also considered cargo stowage components, not hull structure.

*See* ROA.300 (emphasis added)

Therefore, the NVDC concluded that "[a]s outfit, and not part of the Vessel's hull or superstructure, their foreign source and construction will not be an impediment to the qualification of the Vessel to be documented with a coastwise endorsement as a vessel built in the United States." *Id.* The NVDC went on to specify the regulations it relied on, noting that Curtin's description satisfies both prongs of 46 C.F.R. § 67.97 (is U.S.

---

[1] While spuds are not sponsons or floats, as noted by Diamond Services (Appellant's Br., n.3 at 25) they are absolutely not part of a vessel's "flotation envelope," because they do not aid in flotation, nor does Diamond Services allege that they do. They are removable and used for stability while dredging (*see* Appellant's Br. at 8), and therefore closest to "detachable buoyant floats that augment stability or lifting capacity for special operations" and are thus not included in the flotation envelope or part of the hull. Regardless, Diamond Services' argument does not appear to take issue with the Coast Guard's determination regarding the spuds of DB AVALON.

6

built) and therefore would not negatively implicate the foreign rebuilding

provisions of 46 C.F.R. § 67.177. ROA.286-87.

## ARGUMENT

## I. The agency's determination is entitled to deference under the APA.

Diamond Services asserts jurisdiction under the Administrative

Procedure Act ("APA"). ROA.12. Judicial review under the APA is not *de

novo*. Instead, agency action should be set aside only in rare

circumstances, such as where the agency action was "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with

law." 5 U.S.C. § 706(2)(A). "In reviewing an agency's decision under the

arbitrary and capricious standard, there is a presumption that the

agency's decision is valid, and the plaintiff has the burden to overcome

that presumption by showing that the decision was erroneous." *Texas

Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010) (internal

citations omitted).

The APA's standard of review is thus highly deferential, and "a

court is not to substitute its judgment for that of the agency." *F.C.C. v.

Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009); s*ee also

Shipbuilders Council of Am. v. U.S. Coast Guard*, 578 F.3d 234, 245 (4th

Cir. 2009) ("[T]he Coast Guard is the interpretive body best positioned to take account of the myriad factors involved in arriving at a reasonable construction of the complex regulatory scheme for coastwise endorsements. . . ."). The agency's determination "need not be ideal or even, perhaps, correct so long as not 'arbitrary' or 'capricious' and so long as the agency gave at least minimal consideration to the relevant facts as contained in the record." *Texas Clinical Labs*, 612 F.3d at 775 (internal citations omitted).

In other words, this review is not a test of who can think of the best definition or analysis. It is a review of the *agency's* determination and whether it was permissible. Diamond Services distracts the Court by offering alternate definitions or standards which are not set out in regulations and, even if valid, would not prove that the *agency's* determination was impermissible. Here, the agency considered the facts provided by Curtin and applied these facts to the definitions of hull and superstructure in 46 C.F.R. § 67.3. And there is no requirement for the NVDC to create a separate definition of crane or spud to reach its decision.

Under *Chevron,* where a statute is "silent or ambiguous with respect to the specific issue," reviewing courts defer to the administering agency's interpretation so long as it "is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). And when an agency is interpreting its own regulation, under *Auer* deference, the agency's interpretation is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *see also Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14 (1945) ("[T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."). There is no dispute that the relevant statute and regulations do not define crane or spuds or specify whether they are part of the hull or superstructure. Thus, the statute and regulations are silent or ambiguous on the issue before the Court, and the Coast Guard is entitled to *Auer* deference as to its interpretation of its own regulations defining hull and superstructure because their interpretation is (1) authoritative, (2) based on its expertise and (3) reflects the agency's fair and considered judgment. *See Huntington Ingalls, Inc. v. Dir., Off. of*

*Workers' Comp. Programs, United States Dep't of Lab.*, No. 21-60752, 2023 WL 3833853, at *8-*9 (5th Cir. June 6, 2023) (discussing three factors for *Auer* deference to apply).

In its brief, Diamond Services mistakenly states that the Fourth Circuit previously afforded only *Skidmore* deference when reviewing a determination by the Coast Guard (Appellant's Br. at 17). In fact, because the district court in that case erred in its application of the *Skidmore* standard, the Fourth Circuit did not reach the question of whether *Auer* deference applied, citing courts declining to decide whether *Auer* or *Chevron* deference applies to an agency's statutory construction where the agency's interpretation is persuasive even absent such deference. *See Shipbuilders Council of Am. v. U.S. Coast Guard*, 578 F.3d 234, 243 (4th Cir. 2009) ("[B]ecause we find that the district court erred in its application of the *Skidmore* standard, we need not reach the question of whether the major component language of the regulation merely parrots the language of the Jones Act [such that *Auer* deference did not apply]"). The court reversed and remanded, finding that the Coast Guard's "interpretation is longstanding, has been consistently applied in the

10

same manner, and comports with the congressional intent of the governing statute." *Id.* at 245.

*Shipbuilders Council* therefore does not rebut the proposition that *Auer* deference applies. As explained below, the Coast Guard's determination was not arbitrary or capricious and comports with the relevant law. Even assuming the less deferential *Skidmore* standard applies, the Court should still affirm the Coast Guard's interptation, which is "longstanding, has been consistently applied in the same manner, and comports with the congressional intent of the governing statute." *See id.* at 245.

## II.  The statutory and regulatory background of the Jones Act and the Second Proviso.

To engage in coastwise trade or dredging in U.S. waters, a vessel must be issued a coastwise endorsement. *See* 46 U.S.C. § 12102(a) (coastwide trade); 46 U.S.C. § 55109(a) (dredging). Issuance of a coastwise endorsement requires the vessel to be built in the United States. 46 U.S.C. § 12112(a)(2)(A).

If a vessel with a previously-issued coastwise endorsement is rebuilt outside of the United States, additional inquiry is needed to determine whether the vessel retains coastwise trade privileges. 46

U.S.C. § 12132(b). "[A] vessel is deemed to have been rebuilt in the United States only if the entire rebuilding, including the construction of any major component of the hull or superstructure, was done in the United States." 46 U.S.C. § 12101(a). This case turns on the determination that Curtin's vessel is built in the United States for purposes of 46 C.F.R. § 67.97 and not rebuilt foreign per 46 C.F.R. § 67.177. To understand the Coast Guard's determination, the legislative history of this statute is discussed below.

### A. The legislative history of the Second Proviso shows that Congress intended to rely on agency expertise.

Congress, in 1920, enacted Section 27 of the Merchant Marine Act (hereinafter, the "Jones Act") to restrict domestic coastwise trade to vessels built in the U.S. and owned by U.S. citizens. 46 U.S.C. § 55102(b) (formerly 46 U.S.C. app. § 883). Over the next 35 years, the U.S. shipbuilding and repair industry saw a trend of circumventing this requirement by building vessels in domestic shipyards and having repair work performed overseas. *See American Hawaii Cruises v. Skinner*, 713 F.Supp. 452, 462 (D.D.C. 1989). Upon requests to curtail this loophole practice, Congress amended the Jones Act in 1956 to include the provision popularly referred to as the "Second Proviso." ROA.347. This

amendment was "designed to assist the shipyards of the United States by making applicable to vessels rebuilt in foreign yards the historic policy of exclusion from the coastwise trade . . . . " *Id.* The Second Proviso disqualifies vessels from the coastwise trade if they have been "rebuilt outside the United States." *Id.*

However, the Treasury Department, which was then charged with administering the Jones Act, commented that the proposed definition of "rebuilt" was so broad that even a "minor alteration" would disqualify vessels, which was an "undesirable" result. ROA.347, 349. After additional criticisms were lodged, Congress declined to define the word "rebuilt," ROA.347, and expressly delegated authority to the Treasury to "prescribe such regulations as may be necessary to carry out the purposes of this Act." *Am. Hawaii Cruises*, 713 F. Supp. at 462 (citing H.Rep. 84–2293 at 1–2). Thus, since the early days of this statute, Congress has explicitly deferred to the expertise of the agencies to define the details of the U.S. built requirement.

Exercising this delegated authority, the Treasury permitted the insertion of foreign "midbodies" into vessels without disturbing their designation as "U.S. built." ROA.357. However, concern grew as vessel

owners began incorporating larger and larger portions of foreign built

components. ROA.358. In response, Congress amended the Second

Provision in 1960 to a law that is similar to the current statute. ROA.356.

The statute currently reads:

> [A] vessel is deemed to have been rebuilt in the United States
> only if the entire rebuilding, including the construction of any
> major component of the hull or superstructure, was done in
> the United States.

46 U.S.C. § 12101(a). In enacting the amendment, the Senate recognized

that under previous Treasury rulings extending back nearly 80 years,

certain components of vessels, such as the engine, and other equipment

and installations such as hydrofoils, navigation machinery, etc., were not

considered hull components. ROA.360. Congress therefore never

contemplated that any and every component of a vessel, no matter how

small, must be domestically sourced to retain a coastwide endorsement,

and relied on the agency to work out the contours of this statute. This

intention is evinced by the clause that specifies which components are

"include[ed]" in this inquiry, which would be unnecessary if all

components were included. *See Duncan v. Walker*, 533 U.S. 167, 174

(2001) (in interpreting statutes and regulations, courts have a duty "to

give effect, if possible, to every clause and word of a statute.") (internal citations and quotations omitted).

### B. The Coast Guard has promulgated regulations to implement the Jones Act and the Second Proviso and provides publicly available review criteria.

On March 26, 1992, the Coast Guard solicited public comment to revise its vessel documentation regulations and provide more clarity. *See* ROA.365). The Coast Guard held two public meetings, published a statement of policy, and issued a notice of proposed rulemaking. *See* ROA.430.

In April 1996, the Coast Guard promulgated the regulations at issue in this case. *Id.* The regulations provide, in relevant part, that: "A vessel is deemed rebuilt foreign when any considerable part of its *hull or superstructure* is built upon or substantially altered outside of the United States." 46 C.F.R. § 67.177 (emphasis added). This regulation is consistent with 46 U.S.C. § 12101(a), which modifies the phrase "entire rebuilding" with the clause "including the construction of any major component of the *hull or superstructure*." 46 U.S.C. § 12101(a) (emphasis added).

The Coast Guard promulgated further regulations providing that a vessel is United States built if (1) "all major components of its hull and superstructure are fabricated in the United States," and (2) "the vessel is assembled entirely in the United States." 46 C.F.R. § 67.97. Both "hull" and "superstructure" are defined in 46 C.F.R. § 67.3:

- "Hull means the shell, or outer casing, and internal structure below the main deck which provide both the flotation envelope and structural integrity of the vessel in its normal operations…"
- "Superstructure means the main deck and any other structural part above the main deck."[2]

Crucial to this litigation, the statute and regulations provide no definition of crane or spud, independently or in connection with the hull or superstructure.

In addition to these regulations, the Coast Guard puts out guidance in the form of review criteria that is publicly available on the NVDC's website. Per the review criteria available at the time of the determination, and referenced in the NVDC's letter sent to Curtin,

---

[2] The definitions of hull and superstructure thus do not "overlap entirely" as alleged by Diamond Services simply because they can both bolster structural integrity (Appellant's Br. at 34), since the regulatory definition makes clear that the hull includes components below the main deck, and the superstructure includes the main deck and components above the main deck.

16

cranes are not considered part of the hull: "Cargo handling & stowage arrangements: winches & booms, kingposts, *cranes*, etc., are outfitting items and *not included as hull structure*." *See* ROA.300, ¶ (i) (emphasis added).[3] And the spuds as described are not part of the hull either. ROA.299, ¶ (e) ("detachable buoyant floats that augment stability or lifting capacity for special operations are not included" in the hull's flotation envelope).

## III.    The agency's interpretation comports with the statutory and regulatory text.

As explained above, neither the statute nor the regulations provide a definition of crane or spuds, much less clarification on whether these components are included in the hull or superstructure. *See, e.g.*, 46 U.S.C. § 12101(a); 46 C.F.R. § 67.97; 46 C.F.R. § 67.3. The statute must therefore be considered "silent or ambiguous with respect to the specific issue" confronting the Court. *See Chevron*, 467 U.S. at 843; *see also American Hawaii Cruises*, 713 F. Supp. at 460-62 (noting that the Jones Act's

---

[3] The current version of the document, which has been updated since the determination at issue in this case, is available by going to the NVDC's website, selecting Determination Letters (https://www.dco.uscg.mil/Our-Organization/Assistant-Commandant-for-Prevention-Policy-CG-5P/Inspections-Compliance-CG-5PC-/National-Vessel-Documentation-Center/Determination-Letters/), and selecting Review Criteria under "U.S. Build Determinations."

"entire rebuilding" phrase was ambiguous because Congress did not define the phrase, despite its ability to "legislate in minute detail if necessary" and that "[t]he extent of permissible rebuilding, a matter that lies at the heart of this case, is not spelled out."). This Court should therefore defer to the agency's interpretation so long as it "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

The Coast Guard has defined the hull as "the shell, or outer casing, and internal structure below the main deck which provide both the flotation envelope and structural integrity of the vessel in its normal operations," and the superstructure as "the main deck and any other structural part above the main deck." 46 C.F.R. § 67.3. In reaching the instant determination, the NVDC noted that the crane and spuds are removable from the vessel, and that, "[w]hen removed, the Vessel will remain a complete and intact vessel and will be fully capable of operating as a vessel without the spuds and crane." ROA.286. Thus, the NVDC considered the spuds and crane "outfitting and not part of the hull or superstructure of the Vessel." *Id*.

The NVDC then cites the Review Criteria Memorandum subparagraphs (e) and (i), which provide that (relevant to the spuds)

"detachable buoyant floats that augment stability or lifting capacity for special operations are not included in the flotation envelope if they are not otherwise necessary for the vessel's normal stability conditions" and that cranes "are outfitting items and not included as hull structure." *See* ROA.300. Diamond Services has not shown that the agency's determination is irrational or even unreasonable in concluding that the two components, which can be removed without affecting the operation of DB AVALON as a water transportation vessel, are not parts of the flotation envelope and structural integrity of the vessel below the main deck (hull) or structural parts of the main deck or above the main deck (superstructure). *See* 46 C.F.R. § 67.3 (definitions of hull and superstructure).

The Coast Guard's decision was not arbitrary or capricious. In its determination letter, the agency cites to regulatory definitions, which Congress has not overturned by statute or otherwise in the 16 years since they were promulgated, and applies Curtin's descriptions to its own review criteria. *See Texas Clinical Labs*, 612 F.3d at 775 (agency's determination "need not be ideal or even, perhaps, correct so long as not 'arbitrary' or 'capricious' and so long as the agency gave at least minimal

consideration to the relevant facts as contained in the record.") And the Coast Guard's interpretation accords with the law, which Congress intentionally left broad enough for the agency to craft its own definitions based on its expertise. *See Chevron*, 467 U.S. at 843 (agency is entitled to deference so long as agency's interpretation "is based on a *permissible* construction of the statute.") (emphasis added).

The decision also follows previous findings by the Coast Guard that cranes and spuds are not part of the hull or superstructure and thus do not render a vessel foreign built. ROA.439, No. 10[4] (concluding the proposed plan would not render the vessel foreign built, because "[w]e consider the cranes, outriggers, spuds and other mechanical systems to be deck equipment, and therefore their foundations and attachment points are not hull components."). Diamond Services therefore asks this Court to contradict the Coast Guard's previous determination as to whether the crane and spuds are part of the hull or superstructure.

---

[4] This determination letter is in the record and also publicly available by going to the NVDC's website (https://www.dco.uscg.mil/Our-Organization/Deputy-for-Operations-Policy-and-Capabilities-DCO-D/National-Vessel-Documentation-Center/), selecting Determination Letters, and finding the determination letter by date.

Diamond Services' attempts to introduce alternative interpretations of the statute and regulations are irrelevant and do not prove that the agency's interpretation is unlawful. For example, nowhere does the statute or regulations say that a component must be part of the hull or superstructure if it is necessary for the commercial purpose of the vessel, or the "part of the dredge that dredges" (Appellant's Br. at 8). Regardless of whether Diamond Services can fashion other readings of the statute and regulations, the Coast Guard's interpretation is not arbitrary nor capricious, does not contradict the law, and does not fail to take into account the relevant facts presented by Curtin. Accordingly, Diamond Services cannot establish that the Court should upset the deference afforded the agency's determination.

Moreover, the additional considerations for *Auer* deference provided by the Supreme Court in *Kisor* do not upset this analysis. *Kisor* requires the determination (1) to be "one actually made by the agency;" (2) to "in some way implicate its substantive expertise," and (3) to reflect "fair and considered judgment." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2416-17 (2019). Here, the Coast Guard made a determination and explained its decision as set out in the letter issued to Curtin. The analysis of whether

the vessel would remain complete and intact should the crane and/or spuds be removed reflects the Coast Guard's expertise as to waterborne vessels. And the Coast Guard explained its reasoning, relied on its own published guidance, and was consistent with prior rulings. Thus, Diamond Services has not shown that the Coast Guard's decision falls outside "the bounds of reasonable interpretation" of the definitions of hull or superstructure, as the agency's decision reflects "fair and considered judgment." *See id.*

Diamond Services' cited cases do not disturb this conclusion. In *American Hawaii*, the court noted that the Coast Guard provided no explanation for the structural/nonstructural distinction, and found numerous instances of prior, inconsistent rulings by the Coast Guard. *Am. Hawaii Cruises v. Skinner*, 713 F. Supp. 452, 465-68 (D.D.C. 1989). *Keystone Shipping* also involved a Coast Guard decision that was inconsistent with prior decisions. *Keystone Shipping Co. v. United State*s, 801 F. Supp. 771, 782-83 (D.D.C. 1992). Here, unlike the *American Hawaii* decision, the Coast Guard provided an explanation of its determination. And unlike *American Hawaii* and *Keystone Shipping*, Diamond Services has not identified any inconsistent rulings by the

Coast Guard. Nor is its cite to a non-exhaustive list of outfitting a persuasive rebuttal of the Coast Guard's determination. *See* Vessel Rebuilt Determinations, 60 Fed. Reg. 17290, 17291 (Apr. 5, 1995) (listing examples of outfitting by stating "[a]mong items of this type are . . . .").

Diamond Services also challenges the Coast Guard's determination by alleging, without support or specific examples, that "nearly everything on a vessel" can be removed with the vessel remaining intact. Yet there are numerous components of a ship, such as the pilothouse, that if removed, would render the vessel unable to be used as a "means of transportation on water." *See* 46 C.F.R. § 67.3 (definition of vessel).

Lastly, the Court need not apply the "major component" test or the "considerable part" test associated with the Second Proviso. Under the "major component" test, "a vessel is deemed rebuilt when a major component of *the hull or superstructure* not built in the United States is added to the vessel." 46 C.F.R. § 67.177(a). Here, the Coast Guard determined that the crane and spuds are not part of the hull or superstructure, and so the major component test does not apply. Similarly, the "considerable part" test examines the percentage weight of "work performed on its *hull or superstructure*." 46 C.F.R. § 67.177(b)

(emphasis added). Because the crane and spuds are not part of the hull or superstructure, the considerable part test does not apply either. On this point, Diamond Services does not cite any statute, regulation or case which says that one of the tests *must* be applied to the components at issue. And its reference to the Coast Guard's brief in *Shipbuilders Council of Am. v. U.S. Coast Guard* cannot stand for the proposition that either test must always apply, because in that case, the work unquestionably involved the hull. *Shipbuilders Council of Am. v. U.S. Coast Guard*, 578 F.3d 234, 237 (4th Cir. 2009).

**IV.    The legislative history supports the agency's interpretation.**

Although the Court need not reach the issue in order to affirm, the legislative history of the "major component" prohibition supports the Coast Guard's interpretation. *See, e.g.*, ROA.356-57 (explaining that in the Second Proviso, Congress was reacting to the practice of circumventing the Jones Act by towing fully constructed, foreign-built midbodies from abroad to the United States and having them installed in domestic shipyards); *see also Penn. R. Co. v. Dillon*, 335 F.2d 292, 293-94 (D.C. Cir. 1964) (describing the 1960 amendment as a law that "prohibited enrollment and licensing of vessels 'jumboized' by installation

of foreign-made midbodies, or midsections"). This language was intended to prevent the insertion of a completed major component into a vessel, rather than to address the addition of non-structural items that constitute mere outfitting, as was the case here.

Another key aspect of the legislative history is that Congress specifically declined to provide a definition and instead entrusted the Coast Guard and other federal agencies administering the vessel documentation statutes (previously, the Treasury, of which the Coast Guard was a part before moving to Transportation and, ultimately, Homeland Security) to define vague terms and give effect to the legislative intent underlying those statutes. Throughout the years, the agencies have drawn upon their collective institutional wisdom—largely left unchallenged by Congress or the courts—to determine whether an item is part of the hull or superstructure.

Diamond Services' reliance on generic dictionary definitions of technical words such as "structural," which Congress explicitly chose not to define even in the narrow context of the U.S.-built requirement, cannot establish that the agency was erroneous in using its expertise, not the dictionary, to fill in the blanks intentionally left by Congress to defer to

the agency. The various definitions of superstructure provided by Diamond Services, such as whether the component is necessary for dredging, similarly do not establish that the Coast Guard's application of its regulations was incorrect.

Additionally, the Coast Guard's interpretation of superstructure here comports with the definition of superstructure found elsewhere. In 46 C.F.R. § 42.13-15(j), a regulation pertaining to load line determinations and that is also administered by the Coast Guard, superstructure is defined as "a decked structure on the freeboard deck, extending from side to side of the vessel or with the side plating not being inboard of the shell plating more than 4 percent of the breadth." The crane does not span all or almost all of the breadth (beam) of the vessel. Thus, the crane satisfies neither the definition of superstructure found in the U.S.-built regulations at issue in this case or the more detailed definition of superstructure found in other Coast Guard regulations.

If Congress believed that the Coast Guard and its predecessors' approach has deviated from the scheme intended by the passage of the Second Proviso or the purposes of the Jones Act, it could have corrected such administrative error through legislative enactment. Indeed,

Congress has amended the Jones Act on multiple occasions, including major revisions or recodifications in 1983 and 2006. *See Philadelphia Metal Trades Council, MTD, AFL-CIO v. Allen*, No. CIV.A. 07-145, 2008 WL 4003380, at \*19 (E.D. Pa. Aug. 25, 2008) (discussing congressional amendments to Jones Act). That Congress has not acted to respond to the Coast Guard's approach "provide[s] further evidence—if more were needed—that Congress intended the Agency's interpretation, or at least understood the interpretation as statutorily permissible." *See Barnhart v. Walton*, 535 U.S. 212, 220 (2002); *see also Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." There is thus nothing in the legislative history to suggest the agency's decision was contrary to the law or otherwise impermissible under the deferential standard afforded by the APA.

## V.   The Coast Guard's interpretation is consistent with the purposes of the Jones Act.

Although one purpose of the Jones Act is to protect and benefit domestic shipyards and workers, Congress specified a number of other

important purposes for the legislation, including the improvement and modernization of the domestic fleet. The statute states:

> It is necessary for the national defense and the development of the domestic and foreign commerce . . . that the United States have a merchant marine sufficient to carry the waterborne domestic commerce and a substantial part of the waterborne export and import foreign commerce of the United States . . . owned and operated as vessels of the United States by citizens of the United States . . . composed of the best-equipped, safest, and most suitable types of vessels constructed in the United States and manned with a trained and efficient citizen personnel . . . .

46 U.S.C. § 50101(a). By allowing parties to source cranes and spuds from foreign countries for assembly in domestic shipyards, "[t]he Coast Guard ruling allows American shipyards to continue building vessels without imposing limitations on the source of parts so excessive as to render the American construction of ships too expensive to pursue." *See Philadelphia Metal*, 2008 WL 4003380, at *19 (upholding Coast Guard's determination that having equipment modules manufactured abroad and attached to vessels in U.S. shipyards does not disqualify vessels from being considered U.S.-built).

The agency is afforded deference in its judgment of how to achieve the various purposes set out by Congress. S*ee OSG Bulk Ships, Inc. v. United States*, 132 F.3d 808, 816 (D.C. Cir. 1998) ("[T]he agency's

interpretation need not further every statutory purpose in the . . . Act. [The agency's] approach furthers the overall purposes of the statute, and [Plaintiff] has presented no reason to disturb the agency's judgment about how best to weigh the individual purposes to effectuate Congress's overall goals."). The Coast Guard's decision thus promotes a congressionally stipulated purpose and strikes a balance using its discretion recognized by both Congress and the courts.

## CONCLUSION

For the foregoing reasons, Appellees United States of America; Department of Homeland Security; United States Coast Guard; Commandant, Admiral Linda L. Fagan; and the National Vessel Documentation Center respectfully request that the Court affirm the district court's dismissal of the claims against them in their entirety.

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

*/s/ Myra Siddiqui*
MYRA SIDDIQUI
Assistant United States Attorney
1000 Louisiana St., Suite 2300
Houston, TX 77002
(713) 567-9600

Attorneys for Appellees United States of America; Department of Homeland Security; United States Coast Guard; Commandant, Admiral Linda L. Fagan; and the National Vessel Documentation Center

## CERTIFICATE OF SERVICE

I certify that on June 15, 2023, the foregoing was filed and served on Plaintiff-Appellant and counsel of record through the Court's CM/ECF system and transmitted to the Clerk of the Court.

I further certify that, pursuant to Fifth Circuit Rule 31.1, all parties have agreed in writing to waive service of paper copies of this brief and to be served with an electronic copy only.

*/s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1.     This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, this document contains 5,915 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f)).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

*/s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney
Date: June 15, 2023