**Case No. 23-20118**

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

Diamond Services Corporation,

*Plaintiff-Appellant*

v.

Curtin Maritime Corporation; Department of Homeland Security;
National Vessel Documentation Center; United States Coast Guard;
United States of America; Commandant Linda L. Fagan, United States
Coast Guard; Port of Houston Authority,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Southern District of Texas
No. 4:22-cv-02117

---

**RECORD EXCERPTS FOR APPELLEE PORT OF HOUSTON AUTHORITY**

---

AHMAD, ZAVITSANOS & MENSING, PLLC

Kelsi S. White (TBN 24098466)
Federal ID No. 2995914
kwhite@azalaw.com
Todd W. Mensing (TBN 24013156)
Federal ID No. 302944
Sammy Ford IV (TBN 24061331)
Federal ID No. 950682

Michael A. Killingsworth (TBN 24110089)
Federal ID No. 3372610
1221 McKinney St., Ste. 2500
Houston, TX 77010
Phone: 713-655-1101
Fax: 713-655-0062

*Counsel for Appellee Port of Houston Authority*

# Record Excerpts

Tab 1            Docket Sheet, ROA.1–9

Tab 2            Notice of Appeal, ROA.637

Tab 3            The United States Magistrate Judge's Memorandum and
                 Recommendation, ROA.584-610

Tab 4            The District Court's Order Adopting Memorandum and
                 Recommendations, ROA.635-636

Respectfully submitted,

AHMAD ZAVITSANOS & MENSING PLLC

*/s/ Kelsi Stayart White*
Kelsi S. White
Texas Bar No. 24098466
Federal ID No. 2995914
Todd W. Mensing
Texas Bar No. 24013156
Federal ID No. 302944
Sammy Ford IV
Texas Bar No. 24061331
Federal ID No. 950682
Michael A. Killingsworth
Texas Bar No. 24110089
Federal ID No. 3372610
1221 McKinney St., Ste. 2500
Houston, TX 77010
Phone: 713-655-1101
Fax: 713-655-0062
kwhite@azalaw.com
tmensing@azalaw.com
sford@azalaw.com
mkillingsworth@azalaw.com

*Counsel for Appellee Port of Houston Authority*

## Certificate of Service

On June 15, 2023, I certify that I served a true and correct copy of these Record

Excerpts on all counsel of record pursuant to CM/ECF filing in compliance with the

FEDERAL RULES OF APPELLATE PROCEDURE:

Harry E. Morse
Martin S. Bohman
BOHMAN MORSE, L.L.C.
400 Poydras Street
New Orleans, LA 70130
Phone: 214-462-3021

*Counsel for Appellant Diamond Services Corporation*

John Spiller
Jadd Masso
Elizabeth Griffin
CLARK HILL, PLC
909 Fannin Street, Suite 2300
Houston, TX 77010
Phone: 713-951-5600

*Counsel for Appellees Curtin Maritime Corporation*

Myra Farah Siddiqui
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, TX 77002
Phone: 713-567-9600

*Counsel for Federal Defendants-Appellees*

/s/ Kelsi Stayart White
Kelsi Stayart White

# TAB 1

APPEAL,CLOSED,MAG,MOTREF

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Houston)
# CIVIL DOCKET FOR CASE #: 4:22-cv-02117
# Internal Use Only

| | |
|---|---|
| Diamond Services Corporation v. Curtin Maritime Corp. et al | Date Filed: 06/28/2022 |
| Assigned to: Judge Andrew S Hanen | Date Terminated: 03/22/2023 |
| Referred to: Magistrate Judge Sam S Sheldon | Jury Demand: None |
| Cause: 05:551 Administrative Procedure Act | Nature of Suit: 340 Marine |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Diamond Services Corporation**    represented by    **Harry Edson Morse**
Bohman Morse, LLC
400 Poydras St.
Ste. 2050
New Orleans, LA 70130
504-930-4009
Email: harry@bohmanmorse.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Curtin Maritime Corp.**    represented by    **John Kevin Spiller**
Clark Hill, P.L.C.
909 Fannin
Ste 2399
Houston, TX 77010
713-951-5631
Fax: 713-951-5660
Email: jspiller@clarkhill.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Fitzgerald Griffin**
Clark Hill PLC
901 Main St
Ste 6000
Dallas, TX 75202
214-651-2037
Fax: 214-659-4170
Email: egriffin@clarkhill.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Department of Homeland Security**    represented by    **Myra Farah Siddiqui**

DOJ-USAO
1000 Louisiana Street
Suite 2300
Houston, TX 77002
713-567-9600
Email: myra.siddiqui@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**National Vessel Documentation Center**

represented by **Myra Farah Siddiqui**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Coast Guard**

represented by **Myra Farah Siddiqui**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States of America**

represented by **Myra Farah Siddiqui**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Commandant Linda L. Fagan, United States Coast Guard**

represented by **Myra Farah Siddiqui**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Port of Houston Authority**

represented by **Todd W Mensing**
Ahmad Zavitsanos Mensing PC
1221 McKinney Street
Suite 2500
Houston, TX 77010
713-655-1101
Fax: 713-655-0062
Email: tmensing@azalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kelsi Stayart White**
Ahmad, Zavitsanos & Mensing P.C.
1221 McKinney Street
Suite 2500
Houston, TX 77010
713-600-4983
Fax: 713-655-0062
Email: kwhite@azalaw.com
*ATTORNEY TO BE NOTICED*

**Michael Alexander Killingsworth**
Ahmad, Zavitsanos & Mensing, PLLC
1221 McKinney Street
Ste 2500
Houston, TX 77010
713-655-1101
Email: mkillingsworth@azalaw.com
*ATTORNEY TO BE NOTICED*

**Sammy Ford , IV**
Ahmad, Zavitsanos & Mensing, PLLC
1221 McKinney St.
Suite 2500
Houston, TX 77010
713-655-1101
Fax: 713-655-0062
Email: sford@azalaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/28/2022 | 1 (p.10) | COMPLAINT against Commandant Linda L. Fagan, United States Coast Guard, Curtin Maritime Corp., Department of Homeland Security, National Vessel Documentation Center, Port of Houston Authority, United States Coast Guard, United States of America (Filing fee $ 402 receipt number ATXSDC-28384949) filed by Diamond Services Corporation.(Morse, Harry) (Entered: 06/28/2022) |
| 06/29/2022 | 2 (p.26) | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 9/27/2022 at 10:10 AM in Courtroom 700 before Magistrate Judge Sam S Sheldon. (Signed by Judge Andrew S Hanen) Parties notified.(hcarr, 4) (Entered: 06/29/2022) |
| 07/07/2022 | 3 (p.28) | Request for Issuance of Summons as to All Defendants, filed. (Attachments: # 1 (p.10) Errata, # 2 (p.26) Errata, # 3 (p.28) Errata, # 4 (p.44) Errata, # 5 (p.60) Errata, # 6 (p.61) Errata, # 7 (p.66) Errata)(Morse, Harry) (Entered: 07/07/2022) |
| 07/08/2022 | 4 (p.44) | Summons Issued as to All Defendants, U.S. Attorney and U.S. Attorney General. Issued summons returned to plaintiff by NEF, filed.(hlerma, 4) (Entered: 07/08/2022) |
| 07/29/2022 | 5 (p.60) | NOTICE of Resetting re: 2 (p.26) Order for Initial Conference - FORM,. Parties notified. Initial Conference reset for 9/27/2022 at 10:10 AM in by video before Magistrate Judge Sam S Sheldon, filed. (JessicaVillarreal, 3) (Entered: 07/29/2022) |
| 08/01/2022 | | ***Set/Reset Deadlines/Hearings: Initial Conference reset for 9/26/2022 at 10:10 AM in by video before Magistrate Judge Sam S Sheldon (sjones, 4) (Entered: 08/01/2022) |
| 08/03/2022 | 6 (p.61) | RETURN of Service of SUMMONS Executed as to Curtin Maritime Corp. served on 7/12/2022, answer due 8/2/2022, filed.(Morse, Harry) (Entered: 08/03/2022) |
| 08/03/2022 | 7 (p.66) | RETURN of Service of SUMMONS Executed as to United States of America served on 7/12/2022, answer due 9/12/2022, filed.(Morse, Harry) (Entered: 08/03/2022) |
| 08/03/2022 | 8 (p.73) | RETURN of Service, filed.(Morse, Harry) (Entered: 08/03/2022) |
| 08/03/2022 | 9 (p.78) | |

| | | |
|---|---|---|
| | | RETURN of Service of SUMMONS Executed as to Department of Homeland Security served on 7/11/2022, answer due 9/9/2022, filed.(Morse, Harry) (Entered: 08/03/2022) |
| 08/03/2022 | 10 (p.83) | RETURN of Service of SUMMONS Executed as to National Vessel Documentation Center served on 7/12/2022, answer due 9/12/2022, filed.(Morse, Harry) (Entered: 08/03/2022) |
| 08/03/2022 | 11 (p.88) | RETURN of Service of SUMMONS Executed as to Commandant Linda L. Fagan, United States Coast Guard served on 7/11/2022, answer due 9/9/2022, filed.(Morse, Harry) (Entered: 08/03/2022) |
| 08/03/2022 | 12 (p.93) | RETURN of Service of SUMMONS Executed as to United States Coast Guard served on 7/11/2022, answer due 9/9/2022, filed.(Morse, Harry) (Entered: 08/03/2022) |
| 08/12/2022 | | ***Set/Reset Deadlines/Hearings: Initial Conference reset for 9/29/2022 at 01:10 PM in by video before Magistrate Judge Sam S Sheldon (sjones, 4) (Entered: 08/12/2022) |
| 08/19/2022 | 13 (p.98) | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* by Curtin Maritime Corp., filed. Motion Docket Date 9/9/2022. (Attachments: # 1 (p.10) Exhibit A, # 2 (p.26) Exhibit A-1, # 3 (p.28) Exhibit A-2, # 4 (p.44) Exhibit A-3, # 5 (p.60) Exhibit B, # 6 (p.61) Exhibit C, # 7 (p.66) Proposed Order)(Spiller, John) (Entered: 08/19/2022) |
| 08/26/2022 | 14 (p.137) | Opposed MOTION to Dismiss 1 (p.10) Complaint, *Under Rule 12 (b) (1), and (6)* by Port of Houston Authority, filed. Motion Docket Date 9/16/2022. (Attachments: # 1 (p.10) Exhibit Exhibit A - Declaration, # 2 (p.26) Proposed Order Proposed Order Granting Port Houston's Motion to Dismiss)(White, Kelsi) (Entered: 08/26/2022) |
| 08/26/2022 | 15 (p.164) | NOTICE of Appearance by Kelsi White on behalf of Port of Houston Authority, filed. (White, Kelsi) (Entered: 08/26/2022) |
| 08/26/2022 | 16 (p.167) | NOTICE of Appearance by Sammy Ford IV on behalf of Port of Houston Authority, filed. (Ford, Sammy) (Entered: 08/26/2022) |
| 08/26/2022 | 17 (p.170) | NOTICE of Appearance by Michael Killingsworth on behalf of Port of Houston Authority, filed. (Killingsworth, Michael) (Entered: 08/26/2022) |
| 08/26/2022 | 18 (p.173) | NOTICE of Appearance by Todd Mensing on behalf of Port of Houston Authority, filed. (Mensing, Todd) (Entered: 08/26/2022) |
| 09/09/2022 | 19 (p.176) | Agreed MOTION to Reset Initial Scheduling/Pretrial Conference by Diamond Services Corporation, filed. Motion Docket Date 9/30/2022. (Attachments: # 1 (p.10) Proposed Order)(Morse, Harry) (Entered: 09/09/2022) |
| 09/09/2022 | 20 (p.179) | Agreed MOTION to Reset Motion Docket Date for Curtin's Motion to Dismiss (Rec. Doc. 13) by Diamond Services Corporation, filed. Motion Docket Date 9/30/2022. (Attachments: # 1 (p.10) Proposed Order)(Morse, Harry) (Entered: 09/09/2022) |
| 09/12/2022 | 21 (p.182) | NOTICE of Referral of Motion to Magistrate Judge Sam S. Sheldon re 20 (p.179) Agreed MOTION to Reset Motion Docket Date for Curtin's Motion to Dismiss (Rec. Doc. 13), filed. (rhawkins) (Entered: 09/12/2022) |
| 09/12/2022 | | (Court only) ***Motion(s) terminated: 19 (p.176) Agreed MOTION to Reset Initial Scheduling/Pretrial Conference. Mooted by docket entry 20 (p.179) (rhawkins) (Entered: 09/12/2022) |

| | | |
|---|---|---|
| 09/12/2022 | 22 (p.183) | ANSWER to 1 (p.10) Complaint, by Commandant Linda L. Fagan, United States Coast Guard, Department of Homeland Security, National Vessel Documentation Center, United States Coast Guard, United States of America, filed.(Siddiqui, Myra) (Entered: 09/12/2022) |
| 09/15/2022 | 23 (p.192) | ORDER granting 20 (p.179) Motion to Reset; Motion-related deadline set re: 20 (p.179) Agreed MOTION to Reset Motion Docket Date for Curtin's Motion to Dismiss (Rec. Doc. 13). Responses due by 9/16/2022..(Signed by Magistrate Judge Sam S Sheldon) Parties notified.(sjones, 4) (Entered: 09/15/2022) |
| 09/15/2022 | | CONITNUATION OF ENTRY 23 (p.192) FOR STATISTICAL PURPOSES. (Signed by Magistrate Judge Sam S Sheldon) Parties notified.(sjones, 4) (Entered: 09/15/2022) |
| 09/16/2022 | 24 (p.193) | MOTION for Summary Judgment *as to Curtin Maritime* by Diamond Services Corporation, filed. Motion Docket Date 10/7/2022. (Attachments: # 1 (p.10) Exhibit, # 2 (p.26) Exhibit, # 3 (p.28) Affidavit)(Morse, Harry) (Entered: 09/16/2022) |
| 09/16/2022 | 25 (p.228) | RESPONSE in Opposition to 13 (p.98) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)*, filed by Diamond Services Corporation. (Morse, Harry) (Entered: 09/16/2022) |
| 09/16/2022 | 26 (p.244) | RESPONSE in Opposition to 14 (p.137) Opposed MOTION to Dismiss 1 (p.10) Complaint, *Under Rule 12 (b) (1), and (6)*, filed by Diamond Services Corporation. (Morse, Harry) (Entered: 09/16/2022) |
| 09/21/2022 | 27 (p.247) | NOTICE of Resetting. Parties notified. Initial Conference reset for 11/9/2022 at 01:00 PM in by video before Magistrate Judge Sam S Sheldon, filed. (sjones, 4) (Entered: 09/21/2022) |
| 09/21/2022 | 28 (p.248) | Agreed PROPOSED ORDER , filed.(Morse, Harry) (Entered: 09/21/2022) |
| 09/26/2022 | 29 (p.250) | REPLY in Support of 13 (p.98) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)*, filed by Curtin Maritime Corp.. (Spiller, John) (Entered: 09/26/2022) |
| 09/26/2022 | 30 (p.254) | REPLY in Support of 14 (p.137) Opposed MOTION to Dismiss 1 (p.10) Complaint, *Under Rule 12 (b) (1), and (6)*, filed by Port of Houston Authority. (White, Kelsi) (Entered: 09/26/2022) |
| 09/28/2022 | 31 (p.267) | NOTICE of Appearance by Martin Bohman on behalf of Diamond Services Corporation, filed. (Morse, Harry) (Entered: 09/28/2022) |
| 09/28/2022 | 32 (p.268) | NOTICE *of Intention to File Administrative Record and Dispositive Motion* by Commandant Linda L. Fagan, United States Coast Guard, Department of Homeland Security, National Vessel Documentation Center, United States Coast Guard, United States of America, filed. (Siddiqui, Myra) (Entered: 09/28/2022) |
| 10/05/2022 | 33 (p.270) | Agreed MOTION for Extension of Time To Respond to Plaintiff's Motion for Summary Judgment by Curtin Maritime Corp., filed. Motion Docket Date 10/26/2022. (Attachments: # 1 (p.10) Proposed Order)(Spiller, John) (Entered: 10/05/2022) |
| 10/06/2022 | 34 (p.274) | ORDER granting 33 (p.270) Agreed MOTION for Extension of Time To Respond to Plaintiff's Motion for Summary Judgment. Curtin Maritime Corp.'s deadline to |

| | | |
|---|---|---|
| | | respond to Diamond Services Corporation's Motion for Summary Judgment IS extended to November 28, 2022.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 10/07/2022) |
| 10/17/2022 | | ***Set/Reset Deadlines/Hearings: Initial Conference reset for 11/22/2022 at 11:30 AM in by video before Magistrate Judge Sam S Sheldon (sjones, 4) (Entered: 10/17/2022) |
| 10/20/2022 | 35 (p.275) | ORDER REFERRING CASE to Magistrate Judge Sam S Sheldon.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 10/21/2022) |
| 10/21/2022 | 36 (p.276) | Agreed JOINT DISCOVERY/CASE MANAGEMENT PLAN by Diamond Services Corporation, filed.(Morse, Harry) (Entered: 10/21/2022) |
| 10/31/2022 | 37 (p.282) | ADMINISTRATIVE TRANSCRIPT/RECORD from United States Coast Guard by Commandant Linda L. Fagan, United States Coast Guard, Department of Homeland Security, National Vessel Documentation Center, United States Coast Guard, United States of America, filed. (Attachments: # 1 (p.10) Continuation Certification of Administrative Record, # 2 (p.26) Continuation Pages USCG 1-16)(Siddiqui, Myra) (Entered: 10/31/2022) |
| 11/22/2022 | 38 (p.301) | MINUTE ENTRY ORDER: The Court conducted the Initial Conference and entered a Scheduling Order. Appearances: Myra Farah Siddiqui, John Kevin Spiller, Harry Edson Morse, Kelsi Stayart White. Ct Reporter: ERO. Digital Number: 11:30-11:34AM.(Signed by Magistrate Judge Sam S Sheldon) Parties notified.(sjones, 4) (Entered: 11/22/2022) |
| 11/22/2022 | 39 (p.302) | SCHEDULING ORDER. ETT: 3-4 days. Bench. Pltf Expert Witness List due by 1/9/2023. Pltf Expert Report due by 1/9/2023. Deft Expert Witness List due by 2/13/2023. Deft Expert Report due by 2/13/2023. Discovery due by 5/1/2023. Dispositive Motion Filing due by 6/1/2023. Non-Dispositive Motion Filing due by 6/1/2023. Joint Pretrial Order due by 11/28/2023. Final Pretrial Conference set for 1/8/2024 at 01:30 PM in Courtroom 9C before Judge Andrew S Hanen Jury Trial set for 1/22/2024 at 09:00 AM in Courtroom 9C before Judge Andrew S Hanen(Signed by Magistrate Judge Sam S Sheldon) Parties notified.(sjones, 4) (Entered: 11/22/2022) |
| 11/28/2022 | 40 (p.304) | MOTION for Summary Judgment Motions referred to Sam S Sheldon. by Diamond Services Corporation, filed. Motion Docket Date 12/19/2022. (Morse, Harry) (Entered: 11/28/2022) |
| 11/28/2022 | 41 (p.307) | MOTION for Summary Judgment Motions referred to Sam S Sheldon. by Commandant Linda L. Fagan, United States Coast Guard, Department of Homeland Security, National Vessel Documentation Center, United States Coast Guard, United States of America, filed. Motion Docket Date 12/19/2022. (Attachments: # 1 (p.10) Appendix Exhibits A - F, # 2 (p.26) Proposed Order)(Siddiqui, Myra) (Entered: 11/28/2022) |
| 11/28/2022 | 42 (p.442) | RESPONSE to 24 (p.193) MOTION for Summary Judgment *as to Curtin Maritime* filed by Curtin Maritime Corp.. (Attachments: # 1 (p.10) Exhibit A, # 2 (p.26) Exhibit B, # 3 (p.28) Exhibit C, # 4 (p.44) Exhibit D, # 5 (p.60) Proposed Order)(Spiller, John) (Entered: 11/28/2022) |
| 11/29/2022 | 43 (p.481) | Agreed MOTION for Extension of Time Reply brief on Diamond's motion for summary judgment (Rec Doc 24)Motions referred to Sam S Sheldon. by Diamond Services Corporation, filed. Motion Docket Date 12/20/2022. (Attachments: # 1 |

| | | |
|---|---|---|
| | | (p.10) Proposed Order)(Morse, Harry) (Entered: 11/29/2022) |
| 11/30/2022 | 44 (p.484) | ORDER granting 43 (p.481) Motion for Extension of Time; Motion-related deadline set re: 43 (p.481) Agreed MOTION for Extension of Time Reply brief on Diamond's motion for summary judgment (Rec Doc 24). Brief due by 12/19/2022.(Signed by Magistrate Judge Sam S Sheldon) Parties notified.(sjones, 4) (Entered: 11/30/2022) |
| 11/30/2022 | | CONTINUATION OF ENTRY 44 (p.484) FOR STATISTICAL PURPOSES. (Signed by Magistrate Judge Sam S Sheldon) Parties notified.(sjones, 4) (Entered: 11/30/2022) |
| 12/19/2022 | 45 (p.485) | RESPONSE in Opposition to 41 (p.307) MOTION for Summary Judgment , filed by Diamond Services Corporation. (Attachments: # 1 (p.10) Exhibit, # 2 (p.26) Exhibit)(Morse, Harry) (Entered: 12/19/2022) |
| 12/28/2022 | 46 (p.580) | REPLY in Support of 41 (p.307) MOTION for Summary Judgment , filed by Commandant Linda L. Fagan, United States Coast Guard, Department of Homeland Security, National Vessel Documentation Center, United States Coast Guard, United States of America. (Siddiqui, Myra) (Entered: 12/28/2022) |
| 03/06/2023 | 47 (p.584) | MEMORANDUM AND RECOMMENDATION re 40 (p.304) MOTION for Summary Judgment , 24 (p.193) MOTION for Summary Judgment *as to Curtin Maritime* , 41 (p.307) MOTION for Summary Judgment , 13 (p.98) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)*, 14 (p.137) Opposed MOTION to Dismiss 1 (p.10) Complaint, *Under Rule 12 (b) (1), and (6)* Objections to M&R due by 3/20/2023(Signed by Magistrate Judge Sam S Sheldon) Parties notified.(sjones, 4) (Entered: 03/06/2023) |
| 03/20/2023 | 48 (p.611) | OBJECTIONS to 47 (p.584) Memorandum and Recommendations, filed by Diamond Services Corporation. (Morse, Harry) (Entered: 03/20/2023) |
| 03/22/2023 | 49 (p.635) | ORDER ADOPTING MEMORANDUM AND RECOMMENDATIONS, denying re: 40 (p.304) MOTION for Summary Judgment , denying 24 (p.193) MOTION for Summary Judgment *as to Curtin Maritime* , granting 41 (p.307) MOTION for Summary Judgment , granting 13 (p.98) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)*, granting 14 (p.137) Opposed MOTION to Dismiss 1 (p.10) Complaint, *Under Rule 12 (b) (1), and (6)*, adopting 47 (p.584) Memorandum and Recommendations. Plaintiff's objections at entry 48 are overruled. Plaintiff's case is dismissed with prejudice. (Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/23/2023) |
| 03/22/2023 | | (Court only) ***Case Terminated. (jdav, 4) (Entered: 03/23/2023) |
| 03/24/2023 | 50 (p.637) | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 49 (p.635) Order Adopting Memorandum and Recommendations,, by Diamond Services Corporation (Filing fee $ 505, receipt number ATXSDC-29647954), filed.(Morse, Harry) (Entered: 03/24/2023) |
| 03/24/2023 | 51 (p.638) | DKT13 TRANSCRIPT ORDER REQUEST by Diamond Services Corporation. No hearings This order form relates to the following: 50 (p.637) Notice of Appeal, filed.(Morse, Harry) (Entered: 03/24/2023) |
| 03/27/2023 | 52 (p.639) | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 50 (p.637) Notice of Appeal. Fee status: |

| | | |
|---|---|---|
| | | Paid. Reporter(s): ERO, filed. (Attachments: # 1 (p.10) Notice of Appeal) (EfrainGarcia, 1) (Entered: 03/27/2023) |
| 03/27/2023 | | Appeal Review Notes re: 50 (p.637) Notice of Appeal. Fee status: Paid. The appeal filing fee has been paid.Hearings were held in the case. DKT13 transcript order form has been filed., filed.(EfrainGarcia, 1) (Entered: 03/27/2023) |
| 03/29/2023 | | Notice of Assignment of USCA No. 23-20118 re: 50 (p.637) Notice of Appeal, filed.(EfrainGarcia, 1) (Entered: 03/29/2023) |
| 03/29/2023 | | (Court only) Set/Cleared Flags. Appeal_Nat flag cleared. (EfrainGarcia, 1) (Entered: 03/29/2023) |
| 04/03/2023 | 53 (p.641) | NOTICE of Appearance by Elizabeth F. Griffin on behalf of Curtin Maritime Corp., filed. (Griffin, Elizabeth) (Entered: 04/03/2023) |
| 04/04/2023 | | (Court only) ***(PRIVATE ENTRY) ROA requested from USCA, due on 04/18/2023, filed. (DahlilaRodriguez, 1) (Entered: 04/04/2023) |

This Page has intentionally been left blank.

# TAB 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

DIAMOND SERVICES CORPORATION        CIVIL ACTION NO: 4:22-cv-02117

VERSUS
                                    DISTRICT JUDGE
CURTIN MARITIME,                    HON. ANDREW S. HANEN
DEPARTMENT OF HOMELAND SECURITY,
NATIONAL VESSEL DOCUMENTATION CENTER,
US COAST GUARD,
UNITED STATES OF AMERICA, and       MAGISTRATE JUDGE
PORT OF HOUSTON AUTHORITY           HON. SAM S. SHELDON

## NOTICE OF APPEAL

Notice is hereby given that plaintiff Diamond Services Corporation appeals to the United States Court of Appeals for the Fifth Circuit from this Court's judgment dated March 23, 2023, Rec. Doc. 49, dismissing Diamond Services Corporation's suit against Curtin Maritime, Department of Homeland Security, National Vessel Documentation Center, US Coast Guard, United States of America, and Port of Houston Authority with prejudice, as well as all other orders, rulings and decrees leading up to and related to that judgment that are adverse to Diamond Services Corporation.

**DATED**: March 24, 2023

Respectfully submitted:
BOHMAN | MORSE, LLC

/s/Harry E. Morse
HARRY E. MORSE (#31515)
MARTIN S. BOHMAN (#22005)
400 POYDRAS STREET, SUITE 2050
NEW ORLEANS, LA 70130
TELEPHONE: (504) 930-4009
FAX: (888) 217-2744
E-MAIL: Harry@BohmanMorse.com
E-MAIL: Martin@BohmanMorse.com

*Attorneys for Diamond Services Corporation*

# TAB 3

United States District Court
Southern District of Texas
**ENTERED**
March 06, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DIAMOND SERVICEES | § | |
| CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-2117 |
| | § | |
| CURTIN MARITIME CORPORATION, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>

This is a Maritime action brought under the Foreign Dredge Act, 46 U.S.C. § 55109, the Jones Act, 46 U.S.C. § 55102 (formerly 46 App. U.S.C. § 883), the Mandamus Act, 28 U.S.C. § 1361, the Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act, 5 U.S.C. 702, and U.S. Coast Guard regulations. Only vessels built in the United States are eligible to operate in U.S. coastwise trade. The Coast Guard has the administrative responsibility for certifying that vessels are built in the United States under the Jones Act. The present action involves the interpretation of federal law aimed at protecting the U.S. shipbuilding trade. The ultimate issue is whether the Coast Guard erred in ruling that using an intact crane and spuds from a foreign vessel, but attached to a vessel in a shipyard in the United States, does not disqualify that vessel from being considered American-built under the Jones Act.

Diamond Services ("Plaintiff") seeks Declaratory and Injunctive relief pursuant to 28 U.S.C. § 2201 against Defendants the Department of Homeland Security ("Homeland Security"), the United States Coast Guard ("Coast Guard"), the National Vessel Documentation Center ("Center"), the United States of America, Admiral Linda L. Fagan in her capacity as Commandant

of the Coast Guard (together, "the Federal Defendants"), Curtin Maritime Corporation ("Curtin"), and the Port of Houston Authority ("the Port"). Pending before the Court are Plaintiff's Motions for Summary Judgment against Curtin, the Port, and the Federal Defendants, Curtin's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), the Port's Motion to Dismiss under Rule 12(b)(1) and 12(b)(6), and the Federal Defendants' Motion for Summary Judgment. (Dkt. Nos. 13, 14, 24, 40, 41.)[1] Based on a review of the motions, arguments, record, and relevant law, the Court **RECOMMENDS** Plaintiff's Motions for Summary Judgment against Curtin, the Port, and the Federal Defendants (Dkt. No. 24, 40), be **DENIED;** Defendant Curtin's Motion to Dismiss under Rule 12(b)(1) (Dkt. No. 13), be **GRANTED**; Defendant the Port's Motion to Dismiss under Rule 12(b)(1) (Dkt. No. 14), be **GRANTED**; and the Federal Defendants' Motion for Summary Judgment (Dkt. No. 41), be **GRANTED**.

## I.    BACKGROUND

Plaintiff filed a Complaint on June 28, 2022, after the Coast Guard granted a coastwide endorsement to Curtin, Plaintiff's competitor. (Dkt. No. 1.) Curtin filed a motion to dismiss on August 19, 2022. (Dkt. No. 13.) The Port filed a motion to dismiss on August 26, 2022. (Dkt. No. 14.) On September 16, 2022, Plaintiff filed opposition to both motions and a motion for summary judgment against Curtin. (Dkt. Nos. 24, 25, 26.) The Federal Defendants filed the Administrative Record on October 31, 2022. (Dkt. No 37.) On November 28, 2022, the Federal Defendants filed a motion for summary judgment and Plaintiff filed a motion for summary judgment against the

---

[1] On October 20, 2022, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. 636(b)(1)(A) and (B). (Dkt. No. 35.)

Port and the Federal Defendants.[2] (Dkt. Nos. 40, 41.)

On September 10, 2019, Curtin wrote the Coast Guard to seek a preliminary determination if its dredging barge,[3] the DB AVALON, would be eligible to operate in coastwide trade with the inclusion of a foreign-sourced dredging crane and spuds.[4] (Dkt. No. 13 at 2.) Curtin planned on bolting the crane to the hull instead of welding it to the hull so it could be completely removable. (Dkt. No. 41 at 3.) The spuds would also be completely removable. (*Id.*) As such, the vessel would be a complete and intact vessel fully capable as operating as a vessel without the crane and spuds. (*Id.*) The Center, a division of the Coast Guard, consulted with personnel in the Coast Guard's Naval Architecture Division, and concluded that the use of a foreign-sourced dredging crane and spuds are not part of the vessel's hull or superstructure.[5] (Dkt. No. 1 at ¶ 52; Dkt. No. 41 at 3.) Center confirmed, even though the barge would include foreign sourced items, the DB AVALON would be eligible for coastwide determination because the barge would still be considered built in

---

[2] Plaintiff's motion for summary judgment against the Port and the Federal Defendants does not articulate specific arguments as to the Port and Federal Defendants but instead adopts the same reasoning as Plaintiff's motion against Curtin.

[3] "A vessel owner may apply for a preliminary rebuilt determination by submitting: [a] written statement applying for a preliminary rebuilt determination, outlining in detail the work planned and naming the place(s) where the work is to be performed; [c]alculations showing the actual or comparable steelweight of work to be performed on the vessel, the actual or comparable steelweight of the vessel, and comparing the actual or comparable steelweight of the planned work to the actual or comparable steelweight of the vessel; [a]ccurate sketches or blueprints describing the planned work; and [a]ny further submissions requested by the National Vessel Documentation Center." 46 C.F.R. § 67.177(g).

[4] Spuds are retractable vertical steel shafts that can be lowered to the bottom of a waterway to provide additional stability. (Dkt. No 41 at 3.)

[5] "Hull means the shell, or outer casing, and internal structure below the main deck which provide both the flotation envelope and structural integrity of the vessel in its normal operations. In the case of a submersible vessel, the term includes all structural members of the pressure envelope. . . . Superstructure means the main deck and any other structural part above the main deck." 46 C.F.R. § 67.3.

the United States. (*Id.*) Center relied on the "Review Criteria Memorandum" posted on its website, specifically sections (e) and (i). (Dkt. No. 41 at 4.) The memo explained cranes are not considered part of the hull structure and detachable floats that augment a vessel's stability or lifting capacity, like spuds, are not considered part of the hull if they are not necessary for normal stability. (*Id.*) Center confirmed that the barge's initial description satisfied both prongs of 46 C.F.R. § 67.97, requiring the barge to be U.S. built. (*Id.*) As such, it did not negatively implicate the foreign rebuilding provision of 46 C.F.R. § 67.177. (*Id.*) The barge was then constructed at a United States shipyard, in accordance with the Center's determination letter and applicable Coast Guard regulations. (Dkt. No. 13 at 5.) After construction was completed on July 27, 2022, Curtin obtained a Certificate of Documentation ("COD") with a coastwide endorsement so the barge could engage in activities like dredging.[6] (*Id.* at 2, 6.)

Simultaneously, the Port solicited bids to expand the Houston Ship Channel and Curtin was one of six companies to bid on the project. (Dkt. No. 14 at Ex. A.) Plaintiff was not one of the six to bid, nor was it listed as a subcontractor for the project.[7] (*Id.*; Dkt. No. 1 at ¶ 5; Dkt. No. 13 at 6.) Curtin and one other company, Weeks Marine, were awarded the project on June 17, 2022. (Dkt. No. 1 at ¶ 28.) Plaintiff did not file a written protest or request further explanation from the Port. (Dkt. No. 14-1.) Plaintiff now seeks an injunction to preclude the Port from disbursing any funds or work to Curtin for the use of the DB AVALON. (Dkt. No. 1 at 15–16.) Plaintiff claims it

---

[6] "A coastwise endorsement may be issued for a vessel that satisfies the requirements of section 12103 of this title; was built in the United States;

. . . .

Subject to the laws of the United States regulating the coastwise trade, a vessel for which a coastwise endorsement is issued may engage in the coastwise trade." 46 U.S.C. § 12112.

[7] Plaintiff alleges it was a subcontractor for the same project. (Dkt. No. 1 at ¶ 6.) As discussed further below in section III, Plaintiff does not refute the factual contents of the Port employee's affidavit disputing this assertion. Thus, the Court accepts the Port's affidavit as true.

will suffer irreparable harm because Curtin was awarded the job and it will potentially use the DB AVALON on the project and it cannot fairly compete with a barge with foreign sourced components. (Dkt. 1 at ¶ 67.) Plaintiff further alleges if Curtin begins work, the Port cannot rebid the project to a company with compliant dredges such as their own, so the Port and Curtin should be enjoined from beginning the project. (*Id.* at ¶ 67.)

Plaintiff claims that Center's determination that the crane and spuds are not part of the hull or superstructure is contrary to the law and regulations, and it violates the plain language and clear intent of 46 C.F.R. § 67.97 and § 67.177. (Dkt. No. 1 at ¶ 56–57.) Alternatively, Plaintiff claims if that determination is permissible, then 46 C.F.R. § 67.97 and § 67.177 violate § 12101, § 55109, and the Jones Act generally.

## II. LEGAL STANDARDS

### A. STANDING

Standing is a threshold requirement when determining whether subject matter jurisdiction exists. *Juidice v. Vail*, 430 U.S. 327, 331 (1977). To have Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *El Paso Cnty., Texas v. Trump*, 982 F.3d 332, 337 (5th Cir. 2020). "[I]t is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). Instead, a plaintiff must allege facts that are "essential to show jurisdiction." *Id.* A plaintiff seeking injunctive or declaratory relief must also satisfy this standard. *Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019); *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). At the summary judgment stage,

Rule 56 requires a plaintiff seeking summary judgment to go beyond the pleadings and submit specific admissible evidence establishing its standing, including redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### B.  12(b)(1) LACK OF SUBJECT MATTER JURISDICTION

"Federal courts are courts of limited jurisdiction" and their power cannot be expanded by judicial decree. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 257 (5th Cir. 2014). Federal courts have original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. "Federal question jurisdiction exists when 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983)). Courts "must presume that a suit lies outside [it's] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen*, 511 U.S. at 377). When both subject matter jurisdiction and failure to state a claim are at issue in a case, the court should "consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

A court may consider the complaint alone; the complaint supplemented by the undisputed facts evidenced in the record; or the complaint supplemented by undisputed facts plus the court's resolution of those disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer*

*Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "The parties can never consent to federal subject matter jurisdiction, and lack of such jurisdiction is a defense which cannot be waived." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

## C. MANDAMUS ACT

"The Mandamus Act gives federal district courts 'original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff.'" *Sawan v. Chertoff*, 589 F. Supp. 2d 817, 822 (S.D. Tex. 2008) (citing 28 U.S.C. § 1361). Mandamus relief is available only if a plaintiff establishes "(1) a clear right to relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy." *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998). A plaintiff must make a similar showing to be granted injunctive relief under the APA. *See Hernandez–Avalos v. INS*, 50 F.3d 842, 844 (10th Cir. 1995) (explaining that the APA and the Mandamus Act are "merely different means of compelling an agency to take action which by law it is required to take") (citation omitted); *Yan v. Mueller*, No. H–07–0313, 2007 WL 1521732, at *8 (S.D. Tex. May 24, 2007) ("Because both statutes offer similar means of compelling an agency to take action which by law it is required to take, claims made under this provision of the APA and the federal mandamus statute are subject to the same standard."); *Dawoud v. Dep't of Homeland Sec.*, No. 3:06–cv–1730, 2007 WL 4547863, at *8 (N.D. Tex. Dec. 26, 2007) (same).[8]

## D. DECLARATORY JUDGMENT ACT

---

[8] While Plaintiff cites to the Mandamus Act to establish the Court's jurisdiction, Plaintiff does not make an argument seeking relief under the Mandamus Act against the applicable Defendants. (Dkt. No. 1 at ¶ 8.) Plaintiff has not made the necessary showing to entitle it to relief under the Act.

The Declaratory Judgment Act, providing that any federal court may declare the rights and other legal relations of any interested party seeking the declaration, does not create an independent cause of action, and accordingly, a federal court already must have jurisdiction under another federal statute before a plaintiff can invoke the Act. 28 U.S.C. § 2201. "[T]he operation of the Declaratory Judgment Act is procedural only." *Aetna Life Insurance Co. of Hartford, CT v. Haworth*, 300 U.S. 227, 240 (1937). The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *McLaurin v. Waffle House, Inc.*, 178 F. Supp. 3d 536, 565 (S.D. Tex. 2016) (citing 28 U.S.C. § 2201). "A claim under the Declaratory Judgment Act is insufficient to confer federal question jurisdiction under 28 U.S.C. § 1331." *Frye v. Anadarko Petroleum Corp.*, No. 18-20543, 2019 WL 7374806, at *5 (5th Cir. Nov. 4, 2019).

## E. ADMINISTRATIVE PROCEDURE ACT

The Administrative Procedure Act ("APA") directs courts to "hold unlawful and set aside agency action[s]" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). Judicial review is deferential under the standard and a "court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.* "An agency must defend its actions based on the reasons it gave when it acted." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020). When "reviewing an agency's decision under the arbitrary and capricious standard, there is a presumption that the agency's

decision is valid, and the plaintiff has the burden to overcome that presumption by showing that the decision was erroneous." *Texas Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010) (citing *Delta Foundation Inc. v. United States*, 303 F.3d 551, 564 (5th Cir. 2002)).

A "two-step test applies when interpreting an agency regulation." *Texas Clinical Labs*, 612 F.3d at 776. The court, first, must determine if the regulation is ambiguous regarding the specific question. *Id.* Courts must "carefully consider the text, structure, history, and purpose of a regulation" before determining a regulation is genuinely ambiguous and afforded *Auer* deference. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (quoting *Chevron*, 467 U.S. at 843 n. 9). Second, if it is ambiguous, the agency's interpretation of its "own regulations . . . is . . . controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997). The court must defer to an agency's "reasonable interpretation of its own regulations when the regulation's text is 'genuinely ambiguous,'" and the "character and context of the agency's interpretation entitles it to controlling weight." *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 362 (5th Cir. 2021) (quoting *Kisor*, 139 S. Ct. at 2412–15).

"The APA does not provide an independent basis for subject-matter jurisdiction, but a district court may have subject-matter jurisdiction over APA claims under the federal-question statute, 28 U.S.C. § 1331, which states that federal district courts 'have original jurisdiction of any civil actions arising under the Constitution, laws, or treaties of the United States.'" *Sawan*, 589 F. Supp. 2d at 822. "Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review." *Am. Stewards of Liberty v. U.S. Dep't. of Interior*, 370 F. Supp. 3d 711, 723 (W.D. Tex. 2019) (quoting *Blue Ocean Inst. v. Gutierrez*, 585 F. Supp. 2d 36, 41 (D.D.C. 2008)). The Court determines "whether on the administrative record the agency action was" in violation

of the APA's provisions. *Shipbuilders Council of Am. v. U.S. Coast Guard*, 578 F.3d 234, 241 (4th Cir. 2009).

## F.  SUMMARY JUDGMENT

Summary judgment is appropriate under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. McCollister*, 671 F. Supp. 2d 884, 887 (S.D. Tex. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of identifying the basis for the motion and pointing to materials in the record that demonstrate the absence of a genuine dispute of material fact. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *Celotex Corp.*, 477 U.S. at 322–23; *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). If the movant satisfies the initial burden, the burden shifts to the nonmovant to produce evidence of a genuine factual dispute; he cannot merely rely on the pleadings. *Coastal Agric. Supply, Inc.*, 759 F.3d at 505.

In reviewing a motion for summary judgment, the court may not weigh the evidence or make any credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). The court must make reasonable factual inferences in favor of the nonmoving party without accepting "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003);

*see also Baird v. Shagdarsuren*, No. 17-CV-2000, 2020 WL 208815, at *3 (N.D. Tex. Jan. 14, 2020) ("[The nonmoving party's] burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.") (quotations omitted). If the movant satisfies his burden and the nonmovant does not, the court must grant summary judgment. *Baird*, 2020 WL 208815, at *3 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994)).

## III. DISCUSSION

Curtin and the Port seek dismissal for lack of jurisdiction because Plaintiff has not asserted facts demonstrating that Defendants caused actual injury, and Plaintiff has not asserted a cause of action against either, thus it similarly lacks standing to seek declaratory and injunctive relief. (Dkt. No. 13 at 1; Dkt. No. 14 at 4.) "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161 (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 542 (5th Cir. 2022) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). "The doctrine of standing . . . requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Novak v. United States*, No. CIV. 12-00638 LEK, 2013 WL 1817802, at *4 (D. Haw. Apr. 26, 2013), *aff'd*, 795 F.3d 1012 (9th Cir. 2015) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)) (internal quotation marks and citation omitted).

Plaintiff seeks declaratory and injunctive relief but asserts no underlying claim against Curtin. The Court is unable to grant Plaintiff's requested declaratory relief, as it has not

demonstrated that it has a right to bring such a claim. "It is well established that [t]he federal Declaratory Judgment Act . . . does not create a substantive cause of action. A Declaratory Judgment Action is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Reid v. Aransas Cnty.*, 805 F. Supp. 2d 322, 339 (S.D. Tex. 2011) (internal quotations omitted). Plaintiff responds to Curtin with a motion for summary judgment and incorporates its motion with its separately filed opposition to Curtin's motion to dismiss. (Dkt. Nos. 24, 25.) Plaintiff explains, the "narrow issue Diamond brings to this Court on its motion for summary judgment is [that] the crane on the DB AVALON was not built in the United States" but does not explain how this implicates a claim against Curtin under which the Court could grant summary judgment. (Dkt. No. 24 at 11.) Plaintiff uses its opposition to rearticulate the arguments made in the motion for summary judgment but fails to address how it has standing to seek a remedy without bringing an underlying claim against Curtin. (Dkt. No. 25 at 4–5.) Curtin argues Plaintiff's failure to respond to its argument constitutes abandonment.

"The Fifth Circuit has held that a claim or defense may be abandoned (or waived) when a party fails to pursue it beyond their initial pleading." *Williams v. Petroleum*, No. CV 18-1012-JWD-SDJ, 2021 WL 649786, at *5 (M.D. La. Feb. 3, 2021), *report and recommendation adopted*, No. 2021 WL 641543 (Feb. 18, 2021) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding Plaintiff abandoned claim when she failed to defend her allegation in response to motion to dismiss). Likewise, courts have found a claim or defense abandoned when the plaintiff failed to defend it in a dispositive motion. *See, e.g.*, *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001) (dismissing limitations defense due to abandonment in subsequently filed documents); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (dismissing two claims as abandoned due to plaintiff failing to mention any facts in response to defendant's motion

for summary judgement); *Ray v. Dufresne Spencer Grp., LLC*, 2019 WL 97029, at *13 (N.D. Miss. Jan. 3, 2019) ("Plaintiff's response to Defendants' motion . . . does not defend her state law claims. . . . Plaintiff failed to pursue [them and] has abandoned or waived them."); *Draper v. Deutsche Bank Nat'l Tr. Co. as Tr. for Saxon Asset Sec. Tr. 2007-3, Mortg. Loan Asset Backed Certificates, Series 2007-3*, No. 3:18-CV-02904-L, 2019 WL 13240973, at *7 (N.D. Tex. Sept. 30, 2019) (dismissing claims because plaintiff presented no argument in defense of claims in response to the defendants' motion to dismiss, "the court concludes that she has abandoned this claim").

Plaintiff has not asserted an underlying claim against Curtin, nor defended its lack of standing for declaratory or injunctive relief in light of Curtin's motion. *Dahl v. Vill. of Surfside Beach, Texas*, No. 3:20-CV-201, 2022 WL 401466, at *4 (S.D. Tex. Jan. 11, 2022), *aff'd*, No. 22-40075, 2022 WL 17729411 (5th Cir. Dec. 16, 2022) (indicating that the Fifth Circuit instructs that "the case or controversy requirement of Article III of the United States Constitution is identical to the actual controversy requirement under the Declaratory Judgment Act") (citing *State of Texas v. West Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989)). Plaintiff uses its motion and opposition as a vehicle to further its argument against the Federal Defendants as opposed to delineating how it can bring a claim against Curtin. "Standing to sue one defendant does not, on its own, confer standing to sue a different defendant." *Id.* Plaintiff does not adequately assert a claim against Curtin thus lacks standing to seek relief under the Declaratory Judgment Act.

Plaintiff also fails to connect the harm alleged to any action or inaction by Curtin. *Daves*, 22 F.4th at 542 (indicating a "plaintiff must demonstrate 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief'"). Put simply, the conduct Plaintiff complains of is that the Coast Guard allowed Curtin to use its barge. Curtin using the barge allegedly harms Plaintiff because it is a competitor, and the barge's use may

result in lost business. So, Plaintiff wants the Court to enjoin Curtin preliminarily and permanently from using the barge in the territorial waters of the United States. But this is not sufficient to confer standing against Curtin, even under Plaintiff's competitor theory which is primarily supported by out of circuit case law.

While Plaintiff is Curtin's potential competitor in the dredging market, Plaintiff was not a competitor on this dredging project. Plaintiff's theory for standing rests on speculation about the decisions of third parties, but Plaintiff has not shown "that [those] third parties will likely react in predictable ways." See *California v. Texas*, 141 S. Ct. 2104, 2117 (2021) (holding plaintiffs "failed to show that they have alleged an 'injury fairly traceable to the defendant's allegedly unlawful conduct'"). Plaintiff's competitor "claim of injury depends on several layers of decisions by third parties . . . and is too speculative to confer Article III standing." *Little v. KPMG LLP*, 575 F.3d 533, 541 (5th Cir. 2009) ("affirm[ing] the dismissal of the competitors' action under Federal Rule of Civil Procedure 12(b)(1)"). Plaintiff is not entitled to summary judgment against Curtin because it is unclear under what basis Plaintiff brings summary judgment against Curtin. *Am. Hawaii Cruises*, 713 F. Supp. 452, 468–69 (D.D.C. 1989) (declining to extend the relief sought from Plaintiff, to revoke the vessel's license, because it "would be manifestly unjust" when the complained of actor is the Coast Guard). The Court recommends granting Curtin's Rule 12(b)(1) motion to dismiss and recommends denying Plaintiff's motion for summary judgment against Curtin.

The Port asserts that any claimed injury is self-inflicted due to Plaintiff's inaction and failure to bid for the project. *Id.* The Port's jurisdictional argument is factual, as opposed to facial. "The distinction between factual Rule 12(b)(1) motions and factual Rule 12(b)(6) motions is rooted in the unique nature of the jurisdictional question." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th

Cir. 1981). The court is not limited to undisputed facts as it "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Id.* Here, the Port relies on an affidavit from a Port employee who issued the bid solicitation, which directly controverts Plaintiff's assertion it was a subcontractor on the project. (Dkt. No. 14 at 7; Dkt. No. 14-1 at 1–3.) Plaintiff responds to the Port's motion by incorporating its arguments against Curtin but notes that the Port is not a necessary party. (Dkt. No. 26 at 1.) Even though Plaintiff points the Court to the arguments contained in its motion against Curtin, Plaintiff does not address the Port's standing argument, instead defending its standing against the Coast Guard, and standing generally as Curtin's competitor. (Dkt. No. 25 at 14–16.) But Plaintiff's competitor theory is unpersuasive as applied to the Port because they are not competitors. Plaintiff does not rebut that it did not submit a bid for the Port's project nor that it was not a sub-contractor. The Court proceeds then with the factual determination that Plaintiff was not a bidder on the project it seeks to enjoin the Port from completing with the DB AVALON.

Plaintiff does not allege facts which show how it suffered an injury in fact that was caused by the Port, nor does the Court see how it could when it did not bid on the project. Further, Plaintiff does not explain how it holds a basis to enjoin the Port from distributing the project funds it did not bid on. Plaintiff cannot be injured by the Port's extension of the project because Plaintiff never sought to participate in the bidding process. Plaintiff never had a contract to gain, and it cannot allege it was lost based on a generalized interest in the Port's fair administration of contracts to dredgers in the market. *Ray Baillie Trash Hauling, Inc. v. Kleppe*, 477 F.2d 696, 710 (5th Cir. 1973) (indicating that "[since] the plaintiffs have never sought to be eligible for the . . . program, and never having had [a] contract to gain, they cannot now allege that a contract was lost . . . .

Solely on the basis of some generalized interest in the fair administration of a program") (citations omitted).

Plaintiff's injury requires speculation at several levels. *Lujan*, 504 U.S. at 560 (explaining injury must be "concrete and particularized and actual or imminent, not conjectural or hypothetical") (internal quotations and citations omitted). Plaintiff claims it will suffer irreparable harm if Curtin begins work on the Port's project because it cannot fairly compete with the DB AVALON, thus the project should be enjoined. (Dkt. 1. at ¶ 67.) Plaintiff's hypothetical injury as Curtin's competitor requires an attenuated chain of causation. Even if the COD was never extended, it assumes Curtin would not have submitted a bid, and the project not awarded, without the DB AVALON. Or if the COD was now rescinded, that Curtin has no other barge to perform the work on the project. So, this also assumes then that the Port may have granted the project to another bidder, instead of the complete project to the other contractor Weeks Marine, which would require Plaintiff to submit a bid, then the Port would have to select Plaintiff out of the remaining contractors for the bid. But, again, this is all hypothetical. Plaintiff never submitted a bid for the project it claims it was harmed by. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (indicating a "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending"). Plaintiff cannot "adduce facts showing that those choices have been or will be made in such a manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562. The competition for this project is hypothetical. The complained of act of the Coast Guard extending the COD is several layers removed from the Port's actions. Plaintiff does not satisfy standing as to the Port because Plaintiff does not allege a concrete injury fairly traceable to the Port.

Additionally, Plaintiff does not respond to the Port's argument that there are no underlying claims against it which would support declaratory or injunctive relief. Plaintiff has failed "to show that [it] had a right of action to bring [a] claim [against the Port] in the first place." *Harris Cnty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) (holding that summary judgment was proper because the "Declaratory Judgment Act is procedural and does not create an independent private right of action"). "[A] plaintiff cannot use the Declaratory Judgment Act to create a private right of action where none exists." *Reid*, 805 F. Supp. 2d at 339. Plaintiff confirms it does not seek to enjoin the project, nor for Curtin not to perform the project—it just does not want it to perform the project with the DB AVALON, because in its view, it is not entitled to a COD. (Dkt. No. 26 at 1.) Plaintiff explains if it wins against the Coast Guard, it seeks no relief from the Port. (*Id.*) Yet, if the Court does not agree, and Plaintiff loses against the Coast Guard, Plaintiff still would not have a viable claim against the Port, because the DB AVALON would be properly certified. The Port argues that Plaintiff effectively admits it has no basis to enjoin the Port and it has pled itself out of a claim against the Port. (Dkt. No. 30 at 2.) The Court agrees that there is no scenario where Plaintiff has a basis to enjoin the Port. Plaintiff is not entitled to summary judgment against the Port because it is unclear under what basis Plaintiff brings summary judgment against the Port. The Court recommends granting the Port's Rule 12(b)(1) motion to dismiss because Plaintiff has failed to assert standing against the Port and recommends denying Plaintiff's motion for summary judgment against the Port.

The Federal Defendants seek summary judgment because they argue the Center's determination on the COD is entitled to deference. (Dkt. No. 41.) The APA authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. *Yang v. Chertoff*, No.

CIV.A. H-07-789, 2008 WL 151063, at *2 (S.D. Tex. Jan. 11, 2008) (citing 5 U.S.C. § 702). Plaintiff claims it is prejudiced by the Center and Coast Guard's failure to abide by the relevant law and regulation. (Dkt. No. 1 at ¶ 62.) The Court must grant the Federal Defendants' motion unless Plaintiff can show that the Center's decision was erroneous under the deferential standard afforded to its interpretation and decision. Defendants argue Plaintiff has failed to do so. (Dkt. No. 46 at 1.) Plaintiff argues the Court should not extend deference because the Coast Guard did not follow its own unambiguous regulations. (Dkt. No. 45 at 8.)

Plaintiff alleges that the Center abused its discretion and was arbitrary and capricious in determining that the vessel was considered built in the United States because the crane and spuds were not part of the DB AVALON's hull or superstructure and accordingly approving the COD. (Dkt. No. 1 at ¶¶ 52–53.) Plaintiff argues "under the Coast Guard's regulatory definitions, the crane is a part of the superstructure, and the spuds are a part of the hull" and there is no reasonable interpretation otherwise. (Dkt. No. 45 at 4.) While the Center determined that 46 C.F.R. § 67.97 was met, Plaintiff argues that the foreign built crane and spuds are major components of the barge's hull and superstructure, thus, § 67.177 is implicated, and either the major component test or the considerable part test must be applied. (Dkt. No. 1 at ¶ 54.) Thus, the Court must determine whether the "agency's reading of a rule [] reflect[s] 'fair and considered judgment'" that § 67.97 is met. *Kisor*, 139 S. Ct. 2400, 2416–17 (noting deference is appropriate when "the regulatory interpretation [is] one actually made by the agency," "the agency's interpretation . . . implicate[s] its substantive expertise," and the "agency's reading of a rule [] reflect[s] 'fair and considered judgment'"). The Court will consider the statutory and regulatory history, text, structure, and purpose to determine "if the regulation is genuinely ambiguous." *Id.* at 139 S. Ct. at 2404; *see also Christensen v. Harris Cnty.*, 529 U.S. *576,* 587–88 (2000) (explaining that *Chevron* deference

applies to an agency's interpretation of a statute while *Auer* deference applies to "an agency's interpretation of its own regulation" but the analysis is the same).

Congress explicitly deferred to the expertise of agencies to define the details of the U.S. built requirement. *Am. Hawaii Cruises*, 713 F. Supp. at 462 (citing H. Rep. 84–2293 at 1–2) (discussing the adoption of the Second Proviso of the Jones Act where Congress permitted the agency to promulgate the "rebuilt" "regulations as may be necessary to carry out the purposes of this Act"). Congress amended the Proviso in light of a "'loophole' concerning the domestic addition of midbodies" built in foreign shipyards. *Id.* at 463 (citing H. Rep. No. 1887, 86th Cong., 2d Sess. 3 (1960), U.S. Code Cong. & Admin. News 1960, p. 2664). Congress considered eighty years of agency rulings to determine that major components did not encompass items like the engine and other equipment installations. *Id.* The legislative history confirmed the purpose of the major component prohibition was to ensure ship mid-bodies were not being towed from foreign shipyards for installation in domestic shipyards in ships seeking a COD. *See id.* The legislative history supports that some components like equipment would be foreign built,[9] and as long as they were not major components, a vessel could still be qualified as U.S. built. This coincides with the purpose of protecting the U.S. sea trade while allowing domestic shipyards to continue building vessels prudently with foreign sourced components.[10] *Phila. Metal Trades Council, MTD, AFL-CIO v. Allen*, No. CIV.A. 07-145, 2008 WL 4003380, at *19 The statute currently reads:

---

[9] "A vessel is deemed rebuilt foreign when any considerable part of its hull or superstructure is built upon or substantially altered outside of the United States. In determining whether a vessel is rebuilt foreign, the following parameters apply: [r]egardless of its material of construction, a vessel is deemed rebuilt when a major component of the hull or superstructure not built in the United States is added to the vessel. 46 C.F.R. § 67.177.

[10] "[A] vessel may engage in dredging in the navigable waters of the United States only if the vessel is wholly owned by citizens of the United States for purposes of engaging in the coastwise trade; the charterer, if any, is a citizen of the United States for purposes of engaging in

> "[A] vessel is deemed to have been rebuilt in the United States only if the entire rebuilding, including the construction of any major component of the hull or superstructure, was done in the United States.
>
> . . . .
>
> The terms "license", "enrollment and license", "license for the coastwise (or coasting) trade", and "enrollment and license for the coastwise (or coasting) trade" mean a certificate of documentation with a coastwise endorsement issued under this chapter."

46 U.S.C. § 12101. The contours of what a major component was in the context of a rebuild was left up to agency discretion.

The regulations at issue went through notice and comment, two public meetings were held, and the agency issued a statement of policy and a notice of proposed rulemaking. (Dkt. No. 41 at Ex. D, 58 Fed. Reg. 60256, 60256 (Nov. 15, 1993); Dkt. No. 41 at Ex. E, 61 Fed. Reg. 17814-01, 17814 (Apr. 22, 1996).) The regulations instruct that a vessel is U.S. built if "all major components of its hull and superstructure are fabricated in the United States," and "the vessel is assembled entirely in the United States." 46 C.F.R. § 67.97. Both "hull" and "superstructure" are defined in § 67.3 which indicate that: "Hull means the shell, or outer casing, and internal structure below the main deck which provide both the flotation envelope and structural integrity of the vessel in its normal operations . . . Superstructure means the main deck and any other structural part above the main deck."

The Coast Guard provides further guidance through review criteria that is available on its website. (Dkt. No. 41 at Ex. A, "Review Criteria for Steel Weight Components WRT U.S. Build and Foreign Rebuild Determination", United States Coast Guard, Mar. 7, 2019, at USCG016 ¶¶

---

the coastwise trade; and the vessel has been issued a certificate of documentation with a coastwise endorsement under chapter 121 of this title or is exempt from documentation but would otherwise be eligible for such a certificate and endorsement." 46 U.S.C. § 55109.

(e) & (i).) The guidance explained at the time of Curtin's letter that spuds were not considered part of the hull:

> e. Sponsons and floats: Sponsons that are permanently attached to the hull are considered part of—and redefine—its flotation envelope. However, detachable buoyant floats that augment stability or lifting capacity for special operations are not included in the flotation envelope if they are not otherwise necessary for the vessel's normal stability conditions (i.e., these are essentially part of the vessel's cargo-handling arrangements).

Further, it explained that the crane was also not part of the hull:

> i. Cargo handling & stowage arrangements: winches & booms, kingposts, cranes, etc., are outfitting items and not included as hull structure. . . .

(*Id.*) The hull supports the superstructure which both use the term main deck to articulate between the two areas of the vessel, however, main deck is not defined. *FastShip LLC v. United States*, 122 Fed. Cl. 71 (2015), *aff'd*, 892 F.3d 1298 (Fed. Cir. 2018). The criteria explains that the freeboard deck is the appropriate measure because it "concerns both the structural integrity of a vessel as well as its watertight & weathertight integrity." (*Id.* at n.1.) Thus, when reviewing whether something implicates the hull or superstructure one must view it through the lens of structural integrity as the review criteria implies.

The text of the regulation does not instruct whether cranes and spuds are part of the hull or superstructure. Neither party disputes that under the relevant statutes and regulations crane and spuds are not defined, nor do they specify that these items are part of the hull or superstructure, that they are considered major components, or considered a structural part. The Court finds that the regulation is ambiguous because neither Plaintiff's interpretation nor the Coast Guard's interpretation is the only reasonable interpretation, so the Court will analyze if the Coast Guard's interpretation is plainly erroneous or inconsistent with the regulation.

The Center considered the facts provided by Curtin in its letter requesting guidance and applied those facts to the definitions of hull and superstructure in 46 C.F.R. § 67.3. It then determined that the barge would remain an intact and complete vessel capable of operating if the crane and spuds were removed. (Dkt. No. 41 at 4.) The agency reasoned that the components could be removed without affecting the barge's operation as a vessel, the structural integrity of the hull, or the integrity of the superstructure. (*Id.* at 3.) Thus, the foreign sourced components were not part of the hull or superstructure, but they were instead considered outfitting. (*Id.* at 4.) This decision comports with previous Center findings that vessels are not considered foreign built because cranes and spuds were considered equipment and their attachment points were not part of the hull or superstructure. (Dkt. No. 41 at Ex. F, Decision Ltr. 16713/5/2, Apr. 25, 2013, at 3, No. 10.)

Here, there is a presumption that the agency's decision is valid, and the Plaintiff bears the burden to overcome that presumption by showing that the decision was erroneous. *Delta Foundation Inc.*, 303 F.3d at 564. This deference "is rooted in a presumption about congressional intent—a presumption that Congress would generally want the agency to play the primary role in resolving regulatory ambiguities." *Kisor*, 139 S. Ct. at, 2412 (commenting on Congress's routine delegation of rulemaking power to agencies for implementing statues and "considerable latitude to interpret the ambiguous rules they issue"). Thus, it is in the Coast Guard's discretion to determine the provision's applicability to those parts of a vessel and whether they are considered major components, structural parts, or outfitting like equipment. *See Texas Clinical Labs*, 612 F.3d at 776 ("[I]f the regulation is ambiguous, the agency's interpretation (as contained in, e.g., opinion letters) is 'controlling unless plainly erroneous or inconsistent with the regulation.'") (quoting *Auer*, 519 U.S. at 461). The agency's review criteria explains that the spuds and crane are

considered "[c]argo handling & stowage arrangements" because they are not permanently attached to the vessel, and thus they do not redefine the vessel's flotation envelope, so they are not part of the hull. (Dkt. No. 41 at Ex. A at USCG016 ¶¶ (e) & (i).) The Court finds this reasonable.

The Coast Guard argues that its interpretation is not arbitrary and capricious because it is supported by the legislative history and purpose of the Jones Act, longstanding agency practice, and consistent application of the regulations. (Dkt. No. 46 at 1.) The agency has shown it considered the facts provided by Curtin and applied them to its regulatory scheme through its review criteria. Simply put, the Coast Guard explains that the terms "major component" and "structural part" are not implicated because the crane and spuds are equipment which does not affect the operation of the DB AVALON as a vessel, so they are considered outfitting. (*Id.* at 2–3.)

In the context of preventing the insertion of a midship but not preventing the insertion of an engine or electrical system as a major component, the agencies determination falls in line with the historical distinction of major components. *Shipbuilders Council of Am., Inc. v. U.S. Dep't of Homeland Sec.*, 673 F. Supp. 2d 438, 456–57 (E.D. Va. 2009) (indicating that the Coast Guard considered "hoistable car decks," "prefabricated ramps," and "independent 'liftable' car deck panels for some of the auto decks" to be "outfitting" and not major components of the hull or superstructure for the rebuilt analysis). A vessel would not be a working commercial vessel without an engine or electrical system, yet foreign-sourced engine and electrical equipment have been added to vessels without the U.S. built status being affected. *Phila. Metal Trades*, 2008 WL 4003380, at *1, *21 n.8 (holding determination that vessels that contained large, foreign-built equipment modules that did not "contribute to the overall integrity of the vessel" was not arbitrary and capricious and consistent with other Coast Guard determinations).

Plaintiff takes issue with the term "major components" in 46 C.F.R. § 67.97, and claims that the crane and spuds are major components, thus the major component test should have been applied. Plaintiff argues that the crane and spuds are major components because the crane barge would not be such without the components. This argument is unavailing in light of other determinations where crucial parts added to a vessel were not considered major components affecting the U.S. built determination. *See id.* The DB AVALON would still be an operational barge without dredging equipment. Plaintiff seems to argue that either the major component test or considerable part test must always apply when components are added to a vessel, however, fails to cite authority instructing as such or to previous Coast Guard determinations that would support the proposition. *Shipbuilders*, 578 F.3d at 241 (4th Cir. 2009) (explaining one of two tests could apply when "any considerable part of its *hull* . . . is built upon or substantially altered outside of the United States") (emphasis added). The removable spuds and crane do not implicate the hull; thus this case is not instructive on the requirement of the application of either test. Plaintiff has not shown that the agency was unreasonable in not applying either test here.

Plaintiff also argues that there are alternative interpretations of the statute and regulations which are more in line with the history and purpose of the Jones Act. While this supports that the regulations are ambiguous, Plaintiff's interpretation is not the blueprint for reviewing the agency's determination. *See Artex Med., Inc. v. Sebelius*, No. 5:10-CV-84-DF, 2011 WL 13244733, at *2 (E.D. Tex. Apr. 18, 2011) ("An agency's decision 'need not be ideal or even, perhaps, correct so long as not "arbitrary" or "capricious" and so long as the agency gave at least minimal consideration to the relevant facts as contained in the record.'") (citing *Am. Petroleum Inst. v. E.P.A.*, 661 F.2d 340, 349 (5th Cir. 1999)); *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 163 (2007) (indicating the Court "must defer to [the Coast Guard's] interpretation unless an

'alternative reading is compelled by the regulation's plain language or by other indications of the [Coast Guard's] intent as the time of the regulation's promulgation'"). Plaintiff notes that the Federal Defendants do not explain or point to criteria that would show how it came to the conclusion that a crane is not a structural part that does not implicate the definition of superstructure, as opposed to outfitting considered equipment. (Dkt. No. 45 at 9.) The Court does not agree. According to the criteria:

> g. Structural integrity: This refers to any component that is essential to the overall longitudinal/transverse strength of the hull, superstructure, and deckhouses. In general, this includes hull plating, exterior superstructure and deckhouse plating, decks, and attached structural elements required by class society rules (such as girders, web frames, stiffeners, etc). Also includes internal load-bearing bulkheads and columns. However, non-load-bearing bulkheads that essentially only serve to partition interior spaces or tanks are not included (such as bulkheads that create new internal trunks, or fuel/ballast tanks, or that subdivide cargo holds, regardless of size).

(Dkt. No. 41 at Ex. A at USCG016 ¶¶ (g).) Taking this definition with (e) & (i) contained in the same document, it seems that a structural part affects the vessel's structural integrity, thus when a component does not affect structural integrity, it is considered outfitting. When outfitting can be removed from the vessel, like here, and does not affect the structural integrity of the ship, like here, it is not a structural part, thus the vessel's superstructure is not implicated. A vessel can be completed and then outfitted with components like a crane and spuds and still be U.S. built according to the regulations and implementing criteria. This determination is not an outlier and has been consistently found under similar circumstances. (Dkt. No. 41 at Ex. A, USCG010, n. 12–21.) Plaintiff does not explain why the review criteria is impermissible or unreasonable and the Court does not find it as such. *Phila. Metal Trades,* 2008 WL 4003380, at *3 ("The Coast Guard has consistently held that items not integral to the hull or superstructure, such as propulsion machinery, machinery, consoles, wiring, certain mechanical systems and outfitting have no

bearing on a U.S. build determination."). Plaintiff has not shown that this was a plainly erroneous determination, much less an unreasonable determination. The agency has made a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The Center's interpretation of the regulation gives effect to each of its provisions, and the Coast Guard's interpretation comports with the plain language of the regulatory and statutory schemes. The interpretation is longstanding, has been consistently applied in the same manner, and comports with the congressional intent of the governing statute. In this case, the Coast Guard acted reasonably in concluding that the removable crane and spuds were equipment outfitting. As such, the agency's decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and Plaintiff's challenge under the APA fails. 5 U.S.C. § 706(2)(A). The Court recommends granting the Federal Defendant's motion for summary judgment and recommends denying Plaintiff's motion for summary judgment against the Federal Defendants.

## IV.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS:**

(1)    Plaintiff's Motions for Summary Judgment against Curtin, the Port, and the Federal Defendants (Dkt. No. 24, 40), be **DENIED;**

(2)    Defendant Curtin's Motion to Dismiss under Rule 12(b)(1) (Dkt. No. 13), be **GRANTED**;

(3)    Defendant the Port's Motion to Dismiss under Rule 12(b)(1) (Dkt. No. 14), be **GRANTED**;

(4)    Federal Defendants' Motion for Summary Judgment (Dkt. No. 41), be **GRANTED**.

 The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written

objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on March 6, 2023.

Sam S. Sheldon
United States Magistrate Judge

# TAB 4

United States District Court
Southern District of Texas

**ENTERED**

March 23, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DIAMOND SERVICES CORPORATION      §
                                  §
                                  §    CIVIL ACTION NO. H: 22-2117
CURTIN MARITIME CORP., *et al*     §

## **ORDER ADOPTING MEMORANDUM AND RECOMMENDATION**

Pending before the Court in the above referenced proceeding is Plaintiff's Motions for

Summary Judgment (Doc. Nos. 24, 40), response (Doc. No. 42); Defendants' Motions to Dismiss

under Rule 12(6)(1) (Doc. Nos. 13, 14), responses (Doc. Nos. 25, 26) and replies (Doc. Nos. 30, 31),

Federal Defendants' Motion for Summary Judgment (Doc. No. 41), response (Doc. No. 45) and reply

(Doc. No. 46); and Judge Sheldon's Memorandum and Recommendation (Doc. No. 47) that the

Court grant the Defendants' Motions to Dismiss and deny Plaintiff's Motions for Summary

Judgment; and Plaintiff's Objections (Doc. No. 48) to the Memorandum and Recommendation.

The Court has carefully reviewed, *de novo*, the filings, the applicable law, the Magistrate

Judge's Memorandum and Recommendation, and the objections thereto, and agrees with the

Magistrate Judge's conclusions. Accordingly, it is hereby

**ORDERED** that Plaintiff's Objections (Doc. No. 48) are **OVERRULED** and the

Memorandum and Recommendation (Doc. No. 47) is **ADOPTED**. It is further

**ORDERED** that Plaintiff's Motions for Summary Judgment (Doc. Nos. 24, 40) are

**DENIED**. Defendant Curtin Maritime Corporation's Motion to Dismiss under Rule 12(b)(1) (Doc.

No. 13) is **GRANTED**. The Port of Houston Authority's Motion to Dismiss under Rule 12(b)(1)

(Doc. No. 14) is **GRANTED**. The United States Coast Guard and the remaining federal defendants'

Motion for Summary Judgment (Doc. No. 41) is **GRANTED**. It is further

**ORDERED** that Plaintiff's case is **DISMISSED WITH PREJUDICE**.

Entry of this Order shall constitute entry of final judgment.

SIGNED at Houston, Texas, this _____ day of March 2023.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE