No. 23-20118

## In the United States Court of Appeals
## for the Fifth Circuit

---

**Diamond Services Corporation**                    **Plaintiff-Appellant**

v.

**Curtin Maritime Corporation;**
**Department of Homeland Security;**
**National Vessel Documentation**
**Center; United States Coast Guard;**
**United States of America; Commandant**
**Linda L. Fagan, United States Coast**
**Guard; Port of Houston Authority**         **Defendants-Appellees**

---

Appeal from the United States District Court
for the Southern District of Texas
Civil Action No. 4:22-cv-2117

---

## BRIEF OF APPELLEE CURTIN MARITIME CORP.

---

John K. Spiller                     Jadd F. Masso
                                    Elizabeth F. Griffin
CLARK HILL PLC
909 Fannin Street, Suite 2300       CLARK HILL PLC
Houston, Texas 77010                901 Main Street, Suite 6000
(713) 951-5600                      Dallas, Texas 75202
(713) 951-5660 (facsimile)          (214) 651-4300
                                    (214) 651-4330 (facsimile)

*Attorneys for Appellee Curtin Maritime Corp.*

## <u>Certificate of Interested Persons</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Party: | Counsel: |
|---|---|
| Diamond Services Corp. ("Diamond") | Harry Morse, Martin Bohman, Bohman Morse, LLC |
| Department of Homeland Security, Linda Fagan, National Vessel Documentation Center, United States Coast Guard, and United States of America (collectively, "Coast Guard") | Myra Siddiqui, U.S. Attorney's Office |
| Port of Houston Authority (the "Port") | Todd Mensing, Kelsi White, Ahmad Zavitsanos & Mensing, PLLC |
| Curtin Maritime Corp. ("Curtin") | John Spiller, Jadd Masso, and Elizabeth Griffin, Clark Hill, PLC |

*/s/ Elizabeth F. Griffin*
Elizabeth F. Griffin
*Attorney for Appellee*
*Curtin Maritime Corp.*

2

## **Statement Regarding Oral Argument**

Appellee Curtin does not believe oral argument is necessary here. But should the Court believe oral argument will aid its evaluation of the issues presented, Curtin will be pleased to participate.

ClarkHill\L3438\447768\272218124.v10-7/17/23

# **Table of Contents**

Certificate of Interested Persons ............................................................. 2

Statement Regarding Oral Argument ...................................................... 3

Table of Contents ..................................................................................... 4

Table of Authorities ................................................................................. 6

Statement of Jurisdiction ....................................................................... 12

Statement of the Issue ........................................................................... 13

Statement of the Case ............................................................................ 14

      I.    Curtin obtains Coast Guard approval before constructing the DB Avalon. ............................................. 14

      II.   Curtin constructs the DB Avalon in accordance with the approval letter and Coast Guard regulations. ..................... 16

      III.  Curtin completes construction and obtains a Certificate of Documentation and coastwise endorsement for the DB Avalon. ............................................................................ 17

      IV.  The Port's Project ................................................................. 18

      V.   Procedural History ............................................................... 18

Summary of the Argument ..................................................................... 21

Argument ................................................................................................ 23

      I.    Standards of Review ............................................................ 24

           A.   Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction ...................................................... 24

           B.   Standing ..................................................................... 27

      II.   Diamond lacked standing as against Curtin. ........................ 28

           A.   Diamond sought relief but did not allege a claim against Curtin. ............................................................ 28

           B.   Diamond waived the standing issue. ............................ 30

C.    Diamond's request for relief against Curtin fails the test for Article III standing. ................................... 33

    1.    Diamond suffered no injury in fact..................... 33

    2.    Diamond's alleged injury is not traceable to any alleged wrongdoing by Curtin. .................... 37

    3.    Diamond's requested relief would not redress its alleged injury. ................................................. 38

D.    Competitor standing under the APA only supports a competitor suing the government, not one competitor suing another. ........................................... 40

III.    Alternatively, even if Diamond had standing, Diamond's claims against the Coast Guard failed as a matter of law. ....................................................................................... 46

Conclusion ........................................................................... 48

Certificate of Service ........................................................... 52

Certificate of Compliance ................................................... 52

# Table of Authorities

## CASES

*Adams v. Watson,*
  10 F.3d 915 (1st Cir. 1993) ..................................................... 41, 42

*Aetna Life Ins. Co. v. Haworth,*
  300 U.S. 227 (1937) ................................................................. 29

*Am. Hawaii Cruises v. Skinner,*
  713 F. Supp. 452 (D.D.C. 1989) ......................................... 41, 42, 43

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp,*
  397 U.S. 150 (1970) ........................................................ 41, 44, 45

*Auer v. Robbins,*
  519 U.S. 452 (1997) ................................................................. 47

*Black v. Panola Sch. Dist.,*
  461 F.3d 584 (5th Cir. 2006) ............................................... 30, 31

*Borden v. Allstate Ins. Co.,*
  589 F.3d 168 (5th Cir. 2009) ..................................................... 25

*California v. Texas,*
  141 S. Ct. 2104 (2021) .......................................................... 36, 37

*Canadian Lumber Trade Alliance v. U.S.,*
  517 F.3d 1319 (Fed. Cir. 2008) ......................................... 41, 43, 45

*Clinton v. City of New York,*
  524 U.S. 417 (1998) .............................................................. 41, 42

*Collins v. Mnuchin,*
  938 F.3d 553 (5th Cir. 2019) ............................................... 34, 35

*Collins v. Yellen,*
  141 S.Ct. 1761 (2021) ............................................................... 35

*Colonial Penn Group, Inc. v. Colonial Deposit Co.,*
  834 F.2d 229 (1st Cir. 1987) ..................................................... 29

ClarkHill\L3438\447768\272218124.v10-7/17/23

*Continental Automotive Systems, Incorporated v. Avanci, L.L.C.*,
 27 F.4th 326 (5th Cir. 2022)........................................................ 34, 35

*Coury v. Prot*,
 85 F.3d 244 (5th Cir. 1996) ........................................................ 24

*Dahl v. Vill. of Surfside Beach, Texas*,
 No. 3:20-CV-201, 2022 WL 401466 (S.D. Tex. Jan. 11, 2022),
 *aff'd*, No. 22-40075, 2022 WL 17729411 (5th Cir. Dec. 16,
 2022) ........................................................................................ 31

*Daves v. Dallas Cnty., Texas*,
 22 F.4th 522 (5th Cir. 2022)........................................... 27, 28, 32, 37

*El Paso Cnty., Texas v. Trump*,
 982 F.3d 332 (5th Cir. 2020), *cert. denied sub nom.*, *El Paso*
 *Cnty., Tex. v. Biden*, 141 S. Ct. 2885, (2021), *reh'g denied*, 142
 S. Ct. 51 (2021) ........................................................................ 27, 33

*Energy Mgmt. Servs., LLC v. City of Alexandria*,
 739 F.3d 255 (5th Cir. 2014) ...................................................... 24

*Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation Tr. For*
 *Southern Cal.*,
 463 U.S. 1 (1983) ...................................................................... 25, 29

*FW/PBS, Inc. v. Dallas*,
 493 U.S. 215 (1990) .................................................................. 28

*Glen v. Am. Airlines, Inc.*,
 7 F.4th 331 (5th Cir. 2021)......................................................... 24

*Hargrave v. Fibreboard Corp.*,
 710 F.2d 1154 (5th Cir. 1983) .................................................... 31

*Howery v. Allstate Ins. Co.*,
 243 F.3d 912 (5th Cir. 2001) ...................................................... 24

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
 668 F.3d 281 (5th Cir. 2012) ...................................................... 25

*Int'l Longshoremen's & Warehousemen's Union v. Meese,*
    891 F.2d 1374 (9th Cir. 1989) .................................................. 41, 42

*Johnson v. BOKF Nat'l Ass'n,*
    15 F.4th 356 (5th Cir. 2021).................................................... 47, 48

*Juidice v. Vail,*
    430 U.S. 327 (1977) ...................................................................... 27

*Kellam v. Metrocare Servs.,*
    No. 12-352, 2013 WL 12093753 (N.D. Tex. May 31, 2013),
    *aff'd sub nom.*, 560 F. App'x 360 (5th Cir. 2014) ........................... 31

*Kisor v. Wilkie,*
    139 S.Ct. 2400 (2019) .................................................................. 48

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ...................................................................... 24

*La. Energy & Power Auth. v. FERC,*
    141 F.3d 364 (D.C. Cir. 1998) ................................................. 41, 43

*Lane v. Halliburton,*
    529 F.3d 548 (5th Cir. 2008) ....................................................... 26

*Lewis v. Casey,*
    518 U.S. 343 (1996) ...................................................................... 28

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) ...................................................................... 41

*Little v. KPMG LLP,*
    575 F.3d 533 (5th Cir. 2009) .............................. 24, 33, 34, 35, 36, 37

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,*
    594 F.3d 383 (5th Cir. 2010) ....................................................... 26

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...................................................................... 33

*Mendoza v. Perez,*
    754 F.3d 1002 (D.C. Cir. 2014) ............................................... 41, 42

ClarkHill\L3438\447768\272218124.v10-7/17/23

*Philadelphia Metal Trades Council v. Allen*,
No. 07-145, 2008 WL 4003380 (E.D. Pa. Aug. 21, 2008) ........... 41, 43

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ............................................................ 26

*Ray Baillie Trash Hauling, Inc. v. Kleppe*,
477 F.2d 696 (5th Cir. 1973) ............................................................ 36

*Reid v. Aransas Cnty.*,
805 F. Supp. 2d 322 (S.D. Tex. 2011) .............................................. 29

*Robinson v. Hunt Cty., Texas*,
921 F.3d 440 (5th Cir. 2019) ............................................................ 30

*Sawan v. Chertoff*,
589 F. Supp. 2d 817 (S.D. Tex. 2008) .............................................. 25

*Sepulvado v. Jindal*,
729 F.3d 413 (5th Cir. 2013) ............................................................ 30

*Shipbuilders Council of Am. v. U.S. Coast Guard*,
578 F.3d 234 (4th Cir. 2009) ............................................................ 41

*Shrimpers and Fishermen of RGV v. Tex. Comm'n on Env.
Quality*,
968 F.3d 419 (5th Cir. 2020) ............................................................ 35

*Skelly Oil v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) .......................................................................... 29

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .................................................................... 33, 34

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ...................................................... 27, 33, 37, 38

*Stringer v. Whitley*,
942 F.3d 715 (5th Cir. 2019) ............................................................ 28

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......................................................................... 27

9

*Summers v. Louisiana,*
    No. 22-30763, 2023 WL 4265758 (5th Cir. June 9, 2023) ............... 35

*Tex. Clinical Labs, Inc. v. Sebelius,*
    612 F.3d 771 (5th Cir. 2010) .......................................................... 48

*Vantage Trailers, Inc. v. Beall Corp.,*
    567 F.3d 745 (5th Cir. 2009) .......................................................... 30

*Vela v. City of Houston,*
    276 F.3d 659 (5th Cir. 2001) .......................................................... 31

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens,*
    529 U.S. 765 (2000) ........................................................................ 39

*Waller v. Hanlon,*
    922 F.3d 590 (5th Cir. 2019) .......................................................... 28

*White v. Carlucci,*
    862 F.2d 1209 (5th Cir. 1989) ....................................................... 30

**STATUTES**

5 U.S.C. §§ 551, *et seq*................................................................... 25, 46

5 U.S.C. § 702 ................................................................................. 46

5 U.S.C. § 706 ................................................................................. 46

28 U.S.C. § 1331 ............................................................................. 25

28 U.S.C. § 2201 ....................................................................... 19, 29

**OTHER**

*Adams v. Watson*, No. 93-1068 (1st Cir.), 1993 WL 13622615 (Apr.
    8, 1993) (Appellate Brief) ............................................................. 43

*Clinton v. City of New York*, No. 97-1374 (U.S.), 1998 WL 263832
    at *11 (Mar. 13, 1998) (Appellate Brief) ....................................... 42

*La. Energy & Power Auth. v. FERC*, No. 97-1098 (D.C. Cir.), 1998
    WL 35240472 (Jan. 13, 1998) (Appellate Brief) .......................... 43

*Mendoza v. Perez*, No. 13-5118 (D.C. Cir.), 2013 WL 4495854 at *3
        (Aug. 22, 2013) (Appellate Brief) ....................................................42

ClarkHill\L3438\447768\272218124.v10-7/17/23

## **Statement of Jurisdiction**

Curtin does not dispute that this Court has appellate jurisdiction over this appeal.

## **Statement of the Issue**

Did the district court properly grant Curtin's motion to dismiss Diamond's request for declaratory and injunctive relief against it?

## Statement of the Case

Curtin is a company that owns and operates vessels, including dredging barges. (*See* ROA.10-25.) The Avalon is one of Curtin's vessels. (*See* ROA.10-25.)

Diamond sued numerous federal government entities and officials over administrative rulings regarding Curtin's dredging barge, the DB AVALON ("Avalon"), and sought injunctive relief against Curtin and the Port based on the Coast Guard's allegedly improper rulings. (ROA.10-25.) Specifically, as to Curtin, Diamond requested that Curtin be enjoyed from using the Avalon perform any jobs in United States territorial waters. (ROA.25.)

## I.    Curtin obtains Coast Guard approval before constructing the DB Avalon.

In September 2019, long before the Avalon's construction, Curtin applied to the Coast Guard for a determination that the Avalon would be eligible to operate in coastwise trade. (ROA.106, 122, ¶ 3.) Specifically, Curtin requested a determination from the National Vessel Documentation Center ("NVDC") that the Avalon would be considered "built in the United States" and eligible for participation in the coastwise trade of the United States. (*See* ROA.285-87, 330, 337-42.) Curtin's letter

14

described its plans for the Avalon's construction, including attaching a foreign-sourced crane and spuds onto a United States-built hull, with all construction and outfitting work to be performed in the United States. (ROA.122, ¶ 3.) It is undisputed that Curtin's letter to the NVDC accurately disclosed the Avalon's characteristics. (*See* ROA.16, ¶ 33.)

On September 24, 2019, the NVDC issued its determination letter, ruling that the Avalon would be considered built in the United States and eligible for participation in coastwise trade upon completion of construction and installation of the spuds and crane as described in Curtin's letter. (ROA.122, 124-26, 285-87.) The NVDC found that the spuds and crane "would be *considered outfitting and not part of the hull or superstructure* of the Vessel to be documented with a coastwise endorsement as a vessel built in the United States" and that the "foreign source…will not be an impediment to the qualification of the Vessel to be documented with a coastwise endorsement as a vessel built in the United States." (ROA. 124-26, 285-87 (*emphasis added*).) The NVDC's determination also included confirmation that the vessel would not be considered rebuilt foreign. (ROA. 124-26, 285-87.) The NVDC's rationale included confirmation that all major components of the hull and

15

superstructure of the vessel would be fabricated in the United States, and that the vessel would be assembled entirely in the United States. (*See* ROA.124-26, 285-87, 336.) As with all determination letters of this kind, the NVDC's determination letter was duly published and posted on the NVDC website, making it available to the public, including other vessel owners (such as Diamond). (*See* ROA.124-26, 285-87, 334-35.)

## II. Curtin constructs the DB Avalon in accordance with the approval letter and Coast Guard regulations.

In April 2021, Curtin contracted with Conrad Shipyard in Amelia, Louisiana to construct the Avalon's hull and superstructure. (*See* ROA.122, ¶ 5.) The keel was laid on June 8, 2021. (*Id.*) The structural reinforcement of the hull, the deck and superstructure (which are inside the watertight envelope and support the outfitting items installed on the deck), were also constructed at Conrad. (*Id.*) Conrad delivered the Avalon's hull to Curtin in March 2022. (*Id.*)

Curtin then hired an inland tug company to tow the Avalon to Morgan City, Louisiana for outfitting work. (ROA.122, ¶ 5.) Thereafter, Curtin and its other contractors performed the outfitting work in Morgan City, Louisiana. (*Id.*)

16

In July 2021, Curtin purchased the control tower of the offshore supply vessel CONTI from Reliant Recycling, a vessel that was U.S.-flagged with a coastwise endorsement. (ROA.122, ¶ 6.) The CONTI's control tower was removed before the vessel was scrapped and the control tower was placed on the Avalon's completed hull. (*Id.*)

Curtin acquired the crane, spuds, and deck gear from a foreign-flagged crane barge, the SHINSO-300. (*Id.*) The crane, spuds, and deck gear were removed from the SHINSO-300 and installed on the Avalon's Conrad-built hull. (*Id.*)

## III. Curtin completes construction and obtains a Certificate of Documentation and coastwise endorsement for the DB Avalon.

On May 18, 2022, the NVDC issued an initial Certificate of Documentation ("COD") for the Avalon, based on (1) completion of the hull, (2) Conrad's Shipyard filing a Builder's Certificate for its work in Amelia, Louisiana, and (3) the NVDC's determination of tonnage under the simplified measurement system. (ROA.123, ¶ 7.) Curtin promptly notified the NVDC that the COD had been issued prior to Curtin's completion of the Avalon. (*Id.*) The NVDC requested the COD be returned and Curtin did so. (*Id.*) Curtin completed construction and outfitting, and

the America Bureau of Shipping surveyed the Avalon. (ROA.123, ¶ 8.)

Thereafter, Curtin filed its Builder's Certificate with the NVDC for

completion of the Avalon, along with an application for a new COD.

(ROA.123, ¶ 8, 127-28.) Curtin sent the materials to the NVDC on July

15, 2022. (*Id.*) The NVDC issued a COD and coastwise endorsement for

the Avalon on July 27, 2022. (ROA.123, ¶ 9, 129.)

## IV.    The Port's Project

The Port solicited bids for a project to expand the Houston Ship

Channel (the "Project"). (*See* ROA.133-34, ¶ 3.) The Port received six bids

for the Project. (ROA.134, ¶ 5.) The Port awarded Curtin the Project in

June 2022. (ROA.133-34, ¶ 3.)

Diamond did not submit a bid for the Project. (ROA.133-34.)

Diamond also was not listed as a subcontractor on any of the bids. (*Id.*)

After the Port awarded Curtin the Project, Diamond did not file a written

protest of the award, nor did it request a debrief from the Port. (ROA.134-

35, ¶ 7.)

## V.    Procedural History

Diamond filed a Complaint for Declaratory and Injunctive Relief

against the United States of America along with federal agencies,

entities, and officials[1] (collectively, the "Coast Guard"), as well as Curtin, and the Port, alleging that the Coast Guard's administrative rulings regarding the Avalon violated the Foreign Dredge Act and sought declaratory and injunctive relief pursuant to 28 U.S.C. § 2201. (ROA.10-25.) Diamond's complaint was unclear, but it seems that Diamond's alleged basis for relief against all defendants was the Administrative Procedure Act ("APA"). (*See id.*)

Curtin and the Port both moved to dismiss any and all claims against them under Rule 12(b)(1) and 12(b)(6). (ROA.98-163.) Curtin sought dismissal for lack of jurisdiction based on lack of standing to seek declaratory and injunctive relief against Curtin. (ROA.305.)

Diamond moved for summary judgment against all defendants. (ROA.193-227, 304-06.)

The Coast Guard moved for summary judgment on Diamond's claims against the federal defendants. (ROA.307-440.)

The motions were referred to a magistrate, who issued a single memorandum on all the motions, recommending that the district court

---

[1] Department of Homeland Security; National Vessel Documentation Center; United States Coast Guard; Commandant Linda L. Fagan, and United States Coast Guard.

19

deny Diamond's summary judgment motion, grant Curtin and the Port's motions to dismiss on Rule 12(b)(1) grounds, and grant the Coast Guard's summary judgment motion. (ROA.584-634.)

Diamond objected to the magistrate's memorandum and recommendations. (ROA.611-634.)

The district court adopted the magistrate's memorandum and recommendations, denied Diamond's motion, granted the defendants' motions, and dismissed Diamond's case with prejudice. (ROA.635-636.)

Diamond filed a timely notice of appeal. (ROA.637.) On appeal, Diamond complains about the district court's alleged interpretation of "structural part" and deference standard applied to the Coast Guard's determination. *See* Appellant's Br. at 10-11. Diamond also complains of the district court's holding that Diamond lacks standing to sue its competitor, Curtin. *See* Appellant's Br. at 11, 41-45.

ClarkHill\L3438\447768\272218124.v10-7/17/23

## Summary of the Argument

Diamond sought to nullify the Coast Guard's discretionary administrative decisions regarding the Avalon and to enjoin Curtin from operating the Avalon (including for a public works project upon which Diamond never bid). The trial court properly rejected Diamond's effort to involve a federal court in administrative matters that it lacked authority to adjudicate and to have a federal court enjoin a private party where it lacked jurisdiction to do so.

There are multiple grounds for affirming the district court's order granting Curtin's motion to dismiss:

First, Diamond did not assert any underlying legal duty unlawful conduct against Curtin; it merely sought remedies (declaratory and injunctive relief) against Curtin based on its APA claim against the Coast Guard.

Second, Diamond waived its standing arguments as to Curtin because Diamond did not address Curtin's argument and authorities regarding Diamond's failure to plead an affirmative claim against it in the district court.

ClarkHill\L3438\447768\272218124.v10-7/17/23

Third, Diamond failed to establish Article III standing. It failed to allege facts that would demonstrate it suffered any injury in fact that was traceable to Curtin and redressable. For example, Diamond did not bid for, or object to the award of, the Project it now seeks to enjoin. Diamond also did not object to the Coast Guard's determination regarding the Avalon when published to the public.

Fourth, Diamond's standing argument relies solely on the concept of competitor standing under the APA. Diamond's argument fails because the APA only supports standing for a *competitor suing the government* for its action or inaction, *not for one competitor suing another competitor* for a government agency's action or inaction.

Alternatively, even if Diamond had standing, Diamond's claims against the Coast Guard fail as a matter of law. The district court applied the proper deference standard in reviewing the Coast Guard's determination, and Diamond failed to show the Coast Guard's determination was not unreasonable considering the applicable statutes and regulations.

## Argument

Diamond does not bring affirmative claims against Curtin. (ROA.10-25.) Diamond instead asserted claims against the Coast Guard under the APA related to its administrative rulings regarding the Avalon, and requested preliminarily and permanent injunctive relief, as well as declaratory relief, against Curtin based on its claims against the Coast Guard. (ROA.10-25.) Specifically, Diamond requested that Curtin be enjoined from using the Avalon to perform any jobs in United States territorial waters. (ROA.25.)

As to Curtin, this appeal involves the threshold issue of standing, namely, whether the trial court properly ruled that the Administrative Procedure Act does not allow one company to sue a competitor and enjoin it from operating merely because it complains about the Coast Guard's determination regarding the competitor's vessel. (*See* ROA.98-121.)

Apart from standing, this appeal revolves around the Coast Guard's determination about the classification of the crane on a dredging barge. (ROA.98-121, 307-324.) Because the district court correctly held that Diamond lacked standing for its request for relief against Curtin, as well

ClarkHill\L3438\447768\272218124.v10-7/17/23

as that Diamond's claims against the Coast Guard failed as a matter of law, this Court should affirm.

## I.    Standards of Review

### A.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

This Court reviews a dismissal for lack of standing *de novo*. *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 334 (5th Cir. 2021) (citing *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009)).

"Federal courts are courts of limited jurisdiction" whose power cannot be expanded by judicial decree. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 257 (5th Cir. 2014). "The parties can never consent to federal subject matter jurisdiction, and lack of such jurisdiction is a defense which cannot be waived." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). Courts "must presume that a suit lies outside [the court's] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen*, 511 U.S. at 377).

ClarkHill\L3438\447768\272218124.v10-7/17/23

Federal courts have original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. "The APA does not provide an independent basis for subject-matter jurisdiction, but a district court may have subject-matter jurisdiction over APA claims under the federal-question statute." *Sawan v. Chertoff*, 589 F. Supp. 2d 817, 822 (S.D. Tex. 2008); *see also* 5 U.S.C. §§ 551, *et seq.*; 28 U.S.C. § 1331. "Federal question jurisdiction exists when 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009) (quoting *Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation Tr. For Southern Cal.*, 463 U.S. 1, 27-28 (1983)).

Rule 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (internal quotations omitted). When a defendant challenges jurisdiction through a Rule

25

12(b)(1) motion, the plaintiff asserting jurisdiction bears the burden of proof. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In reviewing a Rule 12(b)(1) motion, a court may consider (1) the complaint alone, (2) the complaint supplemented by the undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of those disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). The court may review any documents attached to the complaint as well as any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. Here, because Curtin raised both subject matter jurisdiction and failure to state a claim as grounds for dismissal, the district court considered the Rule 12(b)(1) grounds first and, finding it lacked jurisdiction due to Diamond's lack of standing, did not reach Curtin's Rule 12(b)(6) grounds for dismissal. (ROA.584-610.)

ClarkHill\L3438\447768\272218124.v10-7/17/23

## B.   Standing

Standing is a threshold requirement when determining whether subject matter jurisdiction exists. *Juidice v. Vail*, 430 U.S. 327, 331 (1977). "The doctrine of standing . . . requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotations omitted).

To have Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *El Paso Cnty., Texas v. Trump*, 982 F.3d 332, 337 (5th Cir. 2020), *cert. denied sub nom. El Paso Cnty., Tex. v. Biden*, 141 S. Ct. 2885, (2021), *reh'g denied*, 142 S. Ct. 51 (2021); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998).

"[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Daves v. Dallas Cnty.,*

27

*Texas*, 22 F.4th 522, 542 (5th Cir. 2022) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). "[I]t is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). Instead, a plaintiff must allege facts that are "essential to show jurisdiction." *Id*. A plaintiff seeking injunctive or declaratory relief must also satisfy this standard. *Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019); *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019).

## II.     Diamond lacked standing as against Curtin.

The district court properly ruled that Diamond lacked standing to sue Curtin for the Coast Guard's determination about the Avalon. In this Court, Diamond devoted only the last four pages of its brief to this standing issue. Appellant's Br. at 41-44.

### A.     Diamond sought relief but did not allege a claim against Curtin.

Diamond sought declaratory and injunctive relief against Curtin but did not base the request on any allegation of an underlying legal duty owed by Curtin to Diamond or any allegedly unlawful conduct by Curtin. (ROA.10-25.) The district court properly determined that it was unable

to grant Diamond's requested relief because Diamond did not demonstrate a right to sue Curtin. (*See* ROA.594-95.)

Federal jurisdiction does not lie simply because a plaintiff requests relief under the federal Declaratory Judgment Act ("DJA"). *Colonial Penn Group, Inc. v. Colonial Deposit Co.*, 834 F.2d 229, 232 (1st Cir. 1987); *see also* 28 U.S.C. § 2201. The DJA's operation is procedural only. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). As the district court noted, "it is well established that [t]he federal Declaratory Judgment Act . . . does not create a substantive cause of action. A Declaratory Judgment Action is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." (ROA.594-95 (quoting *Reid v. Aransas Cnty.*, 805 F. Supp. 2d 322, 339 (S.D. Tex. 2011) (internal quotations omitted).)

The DJA only enlarged the range of remedies available in the federal courts; it did not expand courts' jurisdiction. *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 673-674 (1950). The DJA does not affect parties' substantive rights. *Franchise Tax Board of Cal.*, 463 U.S. at 15-17. Claims asserted under the DJA must set forth an "actual controversy"

between the parties. *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

Likewise, injunctive relief is not a cause of action. It is a type of remedy, not the basis for a remedy. *See Robinson v. Hunt Cty., Texas*, 921 F.3d 440, 451 (5th Cir. 2019) (discussing standard for injunctive relief); *see also White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989); *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013).

Because Diamond failed to assert a valid basis to sue Curtin, it lacked standing to seek declaratory and injunctive relief under the Declaratory Judgment Act. (*See* ROA.10-25, 113-15, 596.) Thus, dismissal was proper.

## B.    Diamond waived the standing issue.

Diamond waived argument on this issue because it did not address Curtin's argument in the court below that it could not seek relief without pleading an underlying claim. (*See* ROA.228-243.)

As the district court noted, a plaintiff abandons an issue if it fails to respond to arguments raised on the issue in a motion to dismiss. (ROA.594-95.) *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff abandoned claim when she failed to defend her

allegation in response to motion to dismiss); *Kellam v. Metrocare Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."), *aff'd sub nom.*, *Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) (citations omitted); *see, e.g., Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001) (dismissing limitations defense due to abandonment in subsequently filed documents); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (dismissing claims as abandoned due to plaintiff failing to mention any facts in response to defendant's motion for summary judgement).

Here, Diamond did not assert an underlying claim against Curtin, and failed to defend against this argument in response to Curtin's motion. (*See* ROA.10-25, 228-43, 596 (citing *Dahl v. Vill. of Surfside Beach, Texas*, No. 3:20-CV-201, 2022 WL 401466, at *4 (S.D. Tex. Jan. 11, 2022), *aff'd*, No. 22-40075, 2022 WL 17729411 (5th Cir. Dec. 16, 2022) (indicating that the Fifth Circuit instructs that "the case or controversy requirement of Article III of the United States Constitution is identical to the actual controversy requirement under the Declaratory Judgment Act")).) Diamond also failed to address Curtin's argument that Diamond

31

lacked standing because it did not compete with Curtin on the Project that forms the basis of Diamond's alleged injury. (*See* ROA.228-43.)

Diamond's response to Curtin's motion failed to address how it would have standing to seek a remedy without bringing an underlying claim against Curtin. (*See* ROA.228-243, 594-95.) Rather, Diamond used its response to Curtin's Rule 12 motion as a vehicle to further its argument against the Coast Guard instead of arguing a basis for the requested relief against Curtin, largely reiterating the points from its own summary judgment motion. (*See* ROA.231-39, 594-96.) For example, Diamond asserted that the "narrow issue Diamond brings to this Court on its motion for summary judgment is [that] the crane on the [Avalon] was not built in the United States," but it did not argue how that would implicate a claim against Curtin upon which the district court could grant relief. (ROA.203.)

"Standing to sue one defendant does not, on its own, confer standing to sue a different defendant." *Daves*, 22 F.4th at 542. Diamond's sole focus on arguing the viability of its claims against the Coast Guard waived argument as to standing against Curtin. For these reasons, the district court's dismissal should be affirmed on waiver grounds.

32

### C.   Diamond's request for relief against Curtin fails the test for Article III standing.

If this Court does not affirm the trial court based the above grounds, it should affirm because Diamond failed to establish Article III standing.

To avoid dismissal, Diamond needed to show that (1) it suffered an "injury in fact" that is both concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged action of Curtin (as discussed above, Diamond does not challenge any action or inaction by Curtin), and (3) it is likely, not merely speculative, that a decision in Diamond's favor would redress its injury. *Trump*, 982 F.3d at 337; *see also Steel Co.*, 523 U.S. at 102-04. Diamond failed to establish any of the three elements.

### 1.    Diamond suffered no injury in fact.

A plaintiff must allege an injury in fact—a harm suffered by the plaintiff that is "concrete and actual or imminent and not conjectural or hypothetical." *Steel Co.*, 523 U.S. at 102-04; *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). "A concrete injury must be *de facto*"; that is, it must actually exist. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (internal quotations omitted); *see also Little*, 575 F.3d at 540. An injury must also be particularized, meaning "it must affect the

33

plaintiff in a personal and individual way." *Spokeo, Inc.*, 578 U.S. at 339 (internal quotations omitted).

This Circuit held there was no injury in circumstances that parallel those in the present case. In *Little*, a class of accounting firms sued a competitor claiming it illegally participated in the Texas market by misrepresenting material information on its application for a state license and registration. 575 F.3d at 536-37. The class members claimed to have suffered an economic injury by the competitor's presence in the Texas market. *Id.* at 540. This Circuit held the claimed injury was too speculative to confer standing because it required the assumption that the competitor's clients would have done business with the class members had the competitor not been allowed to conduct business in Texas. *Id.* at 541.

Diamond argues that this Circuit overruled *Little* through its opinion in *Collins v. Mnuchin*, 938 F.3d 553 (5th Cir. 2019). Appellant's Br. at 43. *Mnuchin* does not purport to overturn *Little* or even mention the case. *See Mnuchin*, 938 F.3d 553. Additionally, this Circuit has cited *Little* favorably numerous times since the *Mnuchin* opinion issued. *See, e.g., Continental Automotive Systems, Incorporated v. Avanci, L.L.C.*, 27

34

F.4th 326, 332 (5th Cir. 2022); *Summers v. Louisiana*, No. 22-30763, 2023 WL 4265758, at *2 n. 7, n. 8 (5th Cir. June 9, 2023); *Shrimpers and Fishermen of RGV v. Tex. Comm'n on Env. Quality*, 968 F.3d 419, 428 n. 2 (5th Cir. 2020). Further, *Mnuchin* itself was partially reversed and vacated by *Collins v. Yellen*, 141 S.Ct. 1761 (2021), though not on the issue of standing. Thus, *Little* remains good law.

Here, Diamond did not plead any direct economic injury. (*See* ROA.10-25.) Diamond argues it has standing to contest the Coast Guard's issuance of a certificate of inspection for the Avalon because Diamond is Curtin's competitor. *See* Appellant's Br. at 41-45. Diamond's complaint alleged that allowing the Avalon to operate in coastwise trade resulted in Diamond not participating in the Project and "will make it impossible for Diamond to compete fairly with the Curtin dredge" on future projects. (*See* ROA.20, ¶ 48.) But Diamond lacked sufficient factual allegations to support this assertion. As in *Little*, Diamond's assertion of injury is solely based on the presence of a competitor in the same market. 575 F.3d at 540.

Further, Diamond's standing argument—that it was directly adversely affected by the Coast Guard's determination regarding the

Avalon—depends on the premise that Diamond lost the Project to Curtin because Curtin uses an allegedly "foreign built" dredge. (*See* ROA.20, ¶¶ 47-48.)

The circumstances here are even farther afield than in *Little* because the undisputed facts negate that theory. (ROA.133-34, ¶ 5.) Diamond could not have been awarded the Project under any circumstance because it did not bid on the Project, either directly as a general contractor, indirectly as a sub-contractor, or even as an equipment provider. (*See* ROA.133-34, ¶ 5.) *See Little*, 575 F.3d at 540-41; *see also Ray Baillie Trash Hauling, Inc. v. Kleppe*, 477 F.2d 696, 709-710 (5th Cir. 1973) (plaintiff lacked standing to litigate Small Business Associations policies because it never applied to participate in SBA's program).

For these reasons, Diamond's alleged injury is not concrete, actual, or imminent. It is conjectural and hypothetical. Diamond's standing theory requires speculation as to the decisions of third parties, and Diamond did not show "that [those] third parties will likely react in predictable ways." (ROA.597 (citing *California v. Texas*, 141 S. Ct. 2104,

2117 (2021) (holding plaintiffs "failed to show that they have alleged an 'injury fairly traceable to the defendant's allegedly unlawful conduct'")).)

As the district court explained, Diamond's competitor "claim of injury depends on several layers of decisions by third parties . . . and is too speculative to confer Article III standing." (ROA.597 (citing *Little*, 575 F.3d at 541).) *See Steel Co.*, 523 U.S. at 102-04.

### 2.    Diamond's alleged injury is not traceable to any alleged wrongdoing by Curtin.

Even if the Court finds that Diamond suffered an injury in fact, Diamond lacks standing because it failed to connect its alleged injury to any alleged wrongful action or inaction by Curtin. (ROA.596-97.) Thus, traceability is lacking.

To satisfy the Article III standing inquiry, a "plaintiff must demonstrate 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Daves*, 22 F.4th at 542.

Here, as discussed above, Diamond sought to have the district court enjoin Curtin (preliminarily and permanently) from using the Avalon in United States territorial waters but did not allege any wrongdoing by

37

Curtin. (ROA. 10-25.) Rather, the conduct of which Diamond complains is the Coast Guard's determination regarding the Avalon. (*Id.*)

In fact, Diamond admitted that Curtin accurately disclosed the Avalon's characteristics to the NVDC. (ROA.16, ¶ 33.)

Diamond merely argued that the Avalon's operation allegedly harmed Diamond because it may result in lost business because Curtin is a competitor. (*See* ROA. 10-25, 228-43.) However, this argument is insufficient to confer standing against Curtin, even under Diamond's competitor theory, which is discussed further in Section D. below. (*See* ROA.596-97.)

Thus, Diamond failed to connect its alleged injuries to an alleged action or inaction by Curtin as required to confer Article III standing. *Steel Co.*, 523 U.S. at 102-04.

### 3. Diamond's requested relief would not redress its alleged injury.

Even if the Court finds that Diamond met the first two prongs of the standing inquiry, it lacks standing because it made no showing that the requested relief would redress its alleged injury. (ROA.597.)

To demonstrate redressability a plaintiff must show a "substantial likelihood that the requested relief will remedy the alleged injury in

ClarkHill\L3438\447768\272218124.v10-7/17/23

fact." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000).

Diamond did not allege that the Port acted wrongfully in awarding the Project to Curtin. (*See* ROA.10-25.)

Nor did Diamond show that its requested relief would remedy the future risk that Diamond would have to compete with dredges that utilize components repurposed from foreign vessels, the Avalon being only an example of such vessels. Diamond made no showing that the Avalon is unique in its use of foreign built or sourced components. Contrary to Diamond's argument, the Coast Guard's determination was consistent with prior guidance and rulings. (*See* ROA.124-26, 130-32, 339-40.) *See* Federal Appellee's Br., Dkt. No. 30, at 31.

Furthermore, Diamond conceded that the outcome would be the same whether Curtin was in the case or was dismissed, negating redressability. (ROA.632.) Specifically, Diamond stated:

> Diamond notes at the outset that the Coast Guard filed an answer and a motion for summary judgment, not a motion to dismiss. The Coast Guard does not contest standing. Therefore, *this Court can adopt the Report and dismiss Diamond's complaint against Curtin* and the Port, but still rule for Diamond. *The end result is the same* whether this Court declares the Coast Guard acted

39

improperly in giving the DB AVALON a certificate of documentation, or if it declares that Curtin improperly has a certificate of documentation. One would think Curtin would want an invitation to fight for its dredge, but that is Curtin's decision, not Diamond's.

(ROA.632 (emphases added).)

Therefore, Diamond lacked standing against Curtin and this Court should affirm the district court's dismissal.

### D.    Competitor standing under the APA only supports a competitor suing the government, not one competitor suing another.

Because Curtin is a private company and not a governmental agency, the APA cannot confer standing for Diamond to sue Curtin over the Coast Guard's administrative determination.

Diamond misinterprets competitor standing cases as encompassing non-governmental entities in the class of allowable APA defendants. *See* Appellant's Br. at 44.

Diamond's objections to the magistrate's recommendation complained that it did not "distinguish all the cases Diamond has cited where courts have found standing in challenges of Coast Guard agency action approving a vessel." (ROA.633.) Diamond thereafter noted a presumption in favor of reviewing agency decisions, citing one Supreme

40

Court case and several examples of Coast Guard cases outside this circuit. (ROA.633 (citing *Lincoln v. Vigil*, 508 U.S. 182, 190 (1993); *Shipbuilders Council of Am. v. U.S. Coast Guard*, 578 F.3d 234 (4th Cir. 2009); *Am. Hawaii Cruises v. Skinner*, 713 F. Supp. 452 (D.D.C. 1989); *Philadelphia Metal Trades Council v. Allen*, No. 07-145, 2008 WL 4003380 (E.D. Pa. Aug. 21, 2008)).) However, the cases Diamond cited relate to the review of agency decisions, not court awards of relief against private companies. Further, *Lincoln* and *Shipbuilders* did not involve competitor standing.

Both below and in this Court, Diamond refers to a body of case law holding competitors have standing to challenge agency action, citing two Supreme Court cases and several cases outside this circuit. (ROA.633-34. (citing *Clinton v. City of New York*, 524 U.S. 417, 433, (1998); *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970); *Mendoza v. Perez*, 754 F.3d 1002, 1011 (D.C. Cir. 2014); *Canadian Lumber Trade Alliance v. U.S.*, 517 F.3d 1319 (Fed. Cir. 2008); *Adams v. Watson*, 10 F.3d 915, 921-22 (1st Cir. 1993); *Int'l Longshoremen's & Warehousemen's Union v. Meese*, 891 F.2d 1374, 1376 (9th Cir. 1989)).)

Appellant's Br. at 41-44 (additionally citing *La. Energy & Power Auth. v. FERC*, 141 F.3d 364 (D.C. Cir. 1998)).

However, in all but one of the competitor-standing cases that Diamond cites, the plaintiff only sued government entities or officials, not a private-company competitor. For example, some of Diamond's cited cases did not involve any private parties other than the plaintiff. *See Clinton*, 524 U.S. at 433 (suit only brought against the President of the United States, the Secretary of Health and Human Services, the Director of the Office of Management and Budget, the Secretary of the Treasury) (*see* No. 97-1374 (U.S.), 1998 WL 263832 at *11 (Mar. 13, 1998) (Appellate Brief) for full listing of parties); *Mendoza*, 754 F.3d at 1011 (suit only brought against the Department of Labor and the Secretary of Labor) (*see* No. 13-5118 (D.C. Cir.), 2013 WL 4495854 at *3 (Aug. 22, 2013) (Appellate Brief) for full listing of parties); *Meese*, 891 F.2d at 1376 (did not sue competitor);

In other Diamond's cited cases, private parties intervened in the suit, they were not sued by the plaintiff. *See Am. Hawaii Cruises*, 713 F. Supp. at 454-55 (suit against Secretary of Transportation and Coast Guard Commandant Admiral; competitor that purchased the ship at

42

issue intervened as a party-defendant through its own unopposed motion); *Adams*, 10 F.3d at 921-22 (suit against Commissioner, Massachusetts Department of Food and Agriculture; private entity intervened) (*see* No. 93-1068 (1st Cir.), 1993 WL 13622615 (Apr. 8, 1993) (Appellate Brief) for full listing of parties); *Canadian Lumber Trade Alliance*, 517 F.3d at 1328-34 (Canadian government and goods producers sued the United States and Customs challenging anti-dumping customs implementation; various competitors intervened in the suit); *La. Energy & Power Auth.*, 141 F.3d 364 (suit against Federal Energy Regulatory Commission; private company-competitor intervened) (*see* No. 97-1098 (D.C. Cir.), 1998 WL 35240472 (Jan. 13, 1998) (Appellate Brief) for full listing of parties); *Philadelphia Metal Trades Council*, 2008 WL 4003380 at *1 (suit against the Coast Guard, its Commandant, the NVDC, and its Director; private companies intervened).

Because the plaintiffs in these cases did not seek to sue competitors under the APA, the cases do not support Diamond's standing argument as to Curtin.

*Camp* is the only case Diamond cited where the plaintiff sued both governmental and private parties. In *Camp*, sellers of data processing services were held to have standing to test the United States Comptroller of the Currency's ruling allowing national banks to sell data processing services. 397 U.S. at 153 The plaintiffs included American National Bank and Trust Company as a defendant. *Id*. at 151. The court did not address the different types of defendants in its standing discussion, and it was the government that moved to dismiss on standing grounds. *Id*. at 151-57. As to the competitor, the plaintiffs alleged lost profits generally, but more importantly, they went farther and alleged that the competing bank was performing or preparing to perform services for two customers for whom one of the plaintiffs had previously agreed or negotiated to perform the same services. *Id*. at 152.

*Camp* is distinguishable from the present case. Here, there is no allegation that Curtin is using the Avalon to perform services for Diamond's prior or existing customers. Diamond did not even bid for the only specific project mentioned in its complaint. (ROA.133-34.) Further, Diamond did not seek to recover damages from Curtin, only declaratory

ClarkHill\L3438\447768\272218124.v10-7/17/23

and injunctive relief. (ROA.10-25.) Therefore, *Camp* is not dispositive of the standing issue here.

Further, in *Canadian Lumber*, the North Dakota Wheat Commission ("NDWC"), the only recipient of the dumping subsidy offset distributions challenged by the Canadian producers, did not itself sell wheat. 517 F.3d at 1333-34. Additionally, the Canadian producers did not sue NDWC, and NDWC did not intervene. *Id*. Thus, the competitor referenced in the *Canadian Lumber* standing discussion was never involved in the lawsuit. *Id*. at 1333-34. Thus, the case does not support Diamond's argument for standing as to Curtin because the case only evaluated standing to sue the government, not the competitor. *Id*.

Moreover, as a matter of public policy, the concept of allowing competitors to use a statute authorizing review of government agency determinations as a basis to directly sue and enjoin private-entity competitors would open a Pandora's box of new litigation. It would also set a punitive precedent, subject to abuse by overzealous litigants trying to smear the reputation of their competitors and put competitors out of business by temporarily enjoining their operations while courts evaluate their challenge to governmental agency action.

45

Here, Diamond is a potential competitor in the general dredging market, and was not a competitor on the Project. (*See* ROA.133-34, 597.) Diamond's only affirmative claims are asserted against the Coast Guard under the APA. (ROA.10-25.) The APA gives federal district courts the authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Because Curtin is a private company and not a governmental agency, the APA cannot confer standing for Diamond to sue Curtin over the Coast Guard's administrative determination. *See* 5 U.S.C. §§ 551-559, 702, 706(1). Neither can it serve as a basis for federal court jurisdiction to compel a private party, rather than an agency, to act or refrain from acting. *See id*.

## III.  Alternatively, even if Diamond had standing, Diamond's claims against the Coast Guard failed as a matter of law.

Because the district court dismissed Diamond's case as to Curtin for lack of standing, the district court did not reach the Rule 12(b)(6) grounds for Curtin's motion to dismiss. As discussed above, Diamond alleged no wrongdoing by Curtin. Diamond also alleged legal duty between Diamond and Curtin. In short, Diamond did not attempt to assert a substantive claim against Curtin.

46

Regarding Diamond's APA claims against the Coast Guard, such claims are not attributable to Curtin. However, Curtin will briefly address the claims. Curtin agrees with and incorporates by reference the Coast Guard's arguments made in its brief before this Court. Federal Appellees' Br., Dkt. No. 30 (June 15, 2023).

The district court properly considered the statutory and regulatory text, structure, history, and purpose in determining that the regulation at issue was ambiguous and properly analyzed the Coast Guard's interpretation for plain error or inconsistency with the regulation. (ROA.601-04.) *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (If an agency regulation is ambiguous, the agency's interpretation of its "own regulations . . . is . . . controlling unless 'plainly erroneous or inconsistent with the regulation.'").

The district court properly applied *Kisor* deference, presuming that the Coast Guard's decision was valid and placing the burden on Diamond to show that the decision was error. (ROA.605.) *See Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 362 (5th Cir. 2021) (Courts must defer to an agency's "reasonable interpretation of its own regulations when the regulation's text is 'genuinely ambiguous,'" and the "character and

47

context of the agency's interpretation entitles it to controlling weight.")
(quoting *Kisor v. Wilkie*, 139 S.Ct. 2400, 2412-15 (2019)); *Tex. Clinical
Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010) (When "reviewing
an agency's decision under the arbitrary and capricious standard, there
is a presumption that the agency's decision is valid, and the plaintiff has
the burden to overcome that presumption by showing that the decision
was erroneous.")).

As the district court noted, Diamond's arguments support the
argument that the statute is ambiguous, but do not negate the
reasonableness of the Coast Guard's decision. (ROA.607.)

Thus, the district court properly held that Diamond failed to meet
its burden to show that the Coast Guard's determination was plain error,
and properly held that the Coast Guard acted reasonably in determining
that the removable crane and spuds were equipment outfitting and not
part of the superstructure. (ROA.609.) This Court should affirm.

## Conclusion

The district court properly granted Curtin's motion to dismiss
because Diamond lacked standing to sue Curtin. There are multiple
grounds for affirming the district court's ruling.

48

First, Diamond pleaded for remedies against Curtin (declaratory and injunctive relief) without asserting any underlying claim against it. Diamond sought relief against Curtin based solely on its APA complaints about the Coast Guard's agency determination.

Second, Diamond waived standing arguments as to Curtin because Diamond did not address Curtin's cited authorities and argument regarding Diamond's failure to plead a claim against it.

Third, Diamond did not allege facts that would demonstrate it suffered any injury in fact caused by Curtin because it did not bid for, or object to the award of, the Project it sought to enjoin, and any other alleged injury would be mere speculation.

Fourth, Diamond's argument for standing against Curtin is based solely on the concept of competitor standing under the APA. But competitor-standing under the APA only supports a *competitor suing the government* agency for its action or inaction, *not one competitor suing another competitor* for a government agency's action or inaction.

Fifth, even if Diamond had standing, Diamond's claims against the Coast Guard failed as a matter of law because the district court applied the proper deference standard in reviewing the Coast Guard's ruling,

49

correctly found the regulation was ambiguous, and Diamond failed to show that the Coast Guard's determination was unreasonable.

Therefore, this Court should affirm the district court's dismissal.

Respectfully submitted,

*/s/ Elizabeth F. Griffin*

Jadd F. Masso
Texas Bar No. 24041411
jmasso@clarkhill.com
Elizabeth F. Griffin
Texas Bar No. 24092450
egriffin@clarkhill.com
CLARK HILL PLC
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 651-4300
(214) 651-4330 (facsimile)

John K. Spiller
Federal Bar ID No. 13993
jspiller@clarkhill.com
CLARK HILL PLC
909 Fannin Street, Suite 2300
Houston, Texas 77010
(713) 951-5600
(713) 951-5660 (facsimile)

*Attorneys for Appellee*
*Curtin Maritime Corp.*

## Certificate of Service

I hereby certify that this document has been served on the following via ECF on July 17, 2023 on all counsel of record.

*/s/ Elizabeth F. Griffin*
Elizabeth F. Griffin

*Attorney for Appellee*

## Certificate of Compliance

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,455 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Elizabeth F. Griffin*
Elizabeth F. Griffin

*Attorney for Appellee*